THE PEOPLE *ex rel.* John Fahey *et al. vs.* ROY BURR *et al.*— (THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EUGENE MCCAFFREY *et al.* Plaintiffs in Error.)

*Opinion filed February 17, 1925—Rehearing denied April 10, 1925.*

1. HABEAS CORPUS—*when order as to custody of child is final and binding on the parties.* In a habeas corpus proceeding for the custody of a child the order of a court having jurisdiction is final and binding upon the parties under the same facts and conditions as existed at the time the order was made, but where there has been a change in the circumstances or conditions the parties are at liberty to try the issue upon a second application for the writ.

2. CONTEMPT—*when attorneys are guilty of contempt in filing second petition for habeas corpus.* Attorneys are guilty of contempt in filing a second petition for a writ of *habeas corpus* for the custody of a child where there has been no change in the circumstances or situation of the child since the last valid order was entered, which they did not seek to review by writ of error, and where their second petition is filed before another judge, from whom they conceal facts in regard to former adoption proceedings as well as the former proceedings in *habeas corpus.*

3. SAME—*when alleged intentions will not purge party of contempt charge.* If the acts of a person charged with contempt of court are inconsistent with his alleged intention, and if the acts charged and proved or not denied amount to a contempt, the answer alleging the party intended no contempt will not purge him.

4. ATTORNEYS AT LAW—*an attorney is not authorized to obtain order for client by concealment of facts from court.* An attorney's zeal to serve his client should never be carried to the extent of causing him to seek to accomplish his purpose by a disregard of the authority of the court or by seeking to secure from a court an order or judgment without a full and frank disclosure of all matters and facts which the court ought to know.

WRIT OF ERROR to the Second Division of the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HUGO PAM, Judge, presiding.

MORSE IVES, CHARLES P. R. MACAULAY, and THOMAS E. SWANSON, for plaintiffs in error.

WEYMOUTH KIRKLAND, (WILLIAM H. SYMMES, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

This writ of error was sued out by plaintiffs in error, Eugene McCaffrey and Frank McDonnell, attorneys at law, to review a judgment of the Appellate Court affirming an order and judgment of the superior court of Cook county adjudging them guilty of contempt of court and sentencing each of them to jail ten days and to each pay a fine of $500, and to remain in jail until the fine is paid unless sooner discharged by due process of law.

The Appellate Court prefaced its opinion with a statement of facts shown by the record, the answers of plaintiffs in error to the contempt charge, and the order and judgment of Judge Pam, of the superior court. Plaintiffs in error do not challenge the correctness of said statement in so far as the facts stated are concerned, and we therefore adopt said statement:

"The contempt proceedings were commenced by the filing of a petition by John Fahey and Mary Fahey (hereinafter referred to as the Faheys). Subsequently they filed an amended and verified petition, to which respondents filed separate and verified answers. In the amended petition it is asked that respondents be ruled to show cause, if they can, why they should not be held in contempt of court 'for having interfered with and obstructed the orderly administration of justice by filing the petition for writ of *habeas corpus* in Kankakee county, in the State of Illinois, and the maintenance and prosecution of said cause as attorneys for the petitioner therein, (Roy Burr,) and for having violated the decree of this honorable court (Judge Pam) heretofore entered herein on January 10, 1923, and for having been instrumental in having the order of court entered by the honorable Judge DeSelm on January 12, 1923, nullifying and reversing the order heretofore entered herein on

January 10, 1923, and for having refused to comply with the order of court heretofore entered herein on January 10, 1923.'

"From the amended petition and answers the following facts appear: In 1916 Roy Burr and Daisy Burr were married, and in October, 1917, Daisy Burr obtained a decree of divorce from Roy Burr, and she was given the custody and control of their child, Robert Burr, and it was ordered that Roy Burr pay her the sum of $12 per week for her support and that of the child until further order of court. After the entry of the decree, she, together with the child, lived continuously at the home of her uncle and aunt, the Faheys, in Chicago, Illinois, until January 16, 1922, when she died intestate. Roy Burr failed to comply with the court's order as to payments for said support and maintenance. After the mother's death the child resided with the Faheys and was supported and cared for by them. In April, 1922, the Faheys filed their verified petition, under the statute, in the county court of Cook county for the adoption of the child, alleging that they were husband and wife and residents of the city of Chicago, that the child is about five years of age and upon the death of the mother was left in their care and custody, and that the father resides at Essex, Illinois. Reasons for the adoption are set forth, as are the material portions of the divorce decree, and it is further alleged that the father has at all times failed to provide a home or the necessities of life for the child. Service was had on Roy Burr and he filed an answer to the effect that he did not consent to the adoption, and that, although he is now residing in Chicago, his mother and sister, who have a large farm and home at Essex, Illinois, are willing and able to assist him in the care and education of the child. There was a protracted hearing, and before the entry of any decree an amendment was made to the petition by adding the allegation that Roy Burr was not a fit and proper person to have the custody of the

child for the reason that he had 'abandoned' it. On June 27, 1922, the county court entered a decree of adoption, wherein the court found, *inter alia,* that Roy Burr was not a fit person to have the care and custody of the child in that he had abandoned it; that the guardian *ad litem* consented to the adoption; that the Faheys had sufficient ability to bring up the child and to furnish suitable nurture and education therefor, and that it was for the child's best interests that the adoption be made. No appeal was perfected from the decree and the same has never been altered or vacated. On August 4, 1922, Roy Burr filed a petition for a writ of *habeas corpus* in said superior court for the custody of the child, in which he set forth the divorce decree, the subsequent death of the child's mother and the adoption proceedings and decree, and further alleged that the adoption decree 'was void because of want of jurisdiction' in the county court to enter it. The writ was served and the child brought into court before Judge Miller. The Faheys, in their return, set forth the adoption proceedings and decree; alleged that the decree was valid and had not been reversed, and that the superior court lacked jurisdiction in a *habeas corpus* proceeding to change the custody of the child or to review the action of the county court, and denied that the child was unlawfully detained by them. On August 10, 1922, after hearing arguments, Judge Miller ordered that the child be 'placed in the custody of his father, Roy Burr,' and thereupon in open court the child was given to the father, and shortly thereafter he entrusted its care and custody to his mother, Mrs. Denis Burr, who resided at Essex, Kankakee county, Illinois. The Faheys sued out a writ of error from this Appellate Court (case No. 28292) to reverse Judge Miller's order, and on December 16, 1922, the writ of *supersedeas* issued.

"Roy Burr here entered his appearance, by the respondent McCaffrey as his attorney, but no brief in his behalf was filed. On December 30, 1922, the Faheys filed a peti-

tion for a writ of *habeas corpus* in said superior court for
the custody of the child, the writ was ordered issued by
Judge Pam, was served on Roy Burr and Mrs. Denis Burr,
and the child was brought into court. In said petition the
Faheys set forth all prior proceedings relating to the child
and alleged that it was residing with its grandmother, Mrs.
Denis Burr, at Essex, Illinois, and not with its father, Roy
Burr; that the father was not so situated as to properly
provide and care for it and that it was not receiving proper
care and treatment, and that by reason thereof, and by rea-
son of the issuance of said *supersedeas,* the child should be
returned to the Faheys pending the final determination of
said writ of error suit. Respondent McCaffrey, as attorney
for Roy Burr and Mrs. Denis Burr, entered their special
appearance 'to contest solely the jurisdiction of the court,'
and on January 4 (the child and all other interested par-
ties being in court before Judge Pam) filed a special plea
on behalf of his clients, alleging that the court is 'without
jurisdiction of the subject matter and of the parties,' and
that the father had had the custody of the child by virtue
of that relationship and by virtue of Judge Miller's order
of August 10, 1922, and that since that date 'the status of
the child, the subject matter of this *habeas corpus* hearing,
has not materially changed.' After protracted arguments
Judge Pam stated that he was going to overrule said spe-
cial plea and remand the child to the custody of the Fa-
heys and inquired of McCaffrey whether or not he desired
to stand by the special plea, to which inquiry the latter
replied that he did, and requested that 'additional time' be
granted to his clients before the entry of the final order,
so as to enable them to determine what further action, if
any, they would take in the matter, and thereupon the cause
was continued. On January 9 Frank McDonnell (the other
respondent herein) was employed by McCaffrey to assist
him in the pending matter. On January 10, 1923, all in-
terested parties, including the child, were again in Judge

Pam's court and further arguments were had, participated in by both McCaffrey and McDonnell. Finally a draft order was prepared, inspected by McCaffrey and McDonnell, and entered, overruling the objections to the court's jurisdiction and awarding the custody of the child to the Faheys, and the child was taken by them to their home in Chicago. No appeal had been taken from this order or writ of error prosecuted and the same has not been altered or vacated but remains in full force and effect.

"On the following day (January 11, 1923,) McCaffrey and McDonnell, as attorneys for Roy Burr, caused to be filed in the circuit court of Kankakee county, Illinois, his petition for a writ of *habeas corpus* for the custody of the child, in which it is alleged the child is restrained of its liberty by the Faheys but 'is not detained by virtue of any order, judgment, decree or execution of any court of competent jurisdiction, State or Federal,' and that Roy Burr obtained an order giving him the custody of the child in a proceeding had in the superior court of Cook county at the August, 1922, term of that court. The order of Judge Miller entered on August 10, 1922, is set out in full, but no mention whatever is made in the petition of the adoption proceedings or decree, or the *habeas corpus* proceedings before Judge Pam, or Judge Pam's final order.

"The petition contains the usual prayer, and underneath Roy Burr's signature is his affidavit, signed and sworn to before John A. Mayhew, a notary public, 'this 10th day of January, A. D. 1923,'—the same day Judge Pam's order was entered. Underneath the affidavit are the words, 'McCaffrey and McDonnell, Atty's for petitioner.' The writ was issued, and on the night of January 11 Roy Burr, accompanied by a deputy sheriff of Kankakee county, entered the Fahey's home and took the child. Early on the following morning, January 12, before Judge DeSelm, one of the judges of the circuit court of Kankakee county, the officer produced the child, and there was a hearing, at which

McCaffrey and McDonnell and said Mayhew appeared as attorneys for Roy Burr, and Roy Burr testified. McCaffrey, in response to questions asked by the judge, informed the court of the entry of Judge Miller's order, the pending writ of error suit to reverse that order, and the granting of the *supersedeas* and of the entry of Judge Pam's order, which he claimed was void for want of jurisdiction, but McCaffrey did not advise the court as to the day when Judge Pam's order was entered, and at no time during the hearing did he advise the court of the adoption proceedings or of the adoption decree. The Faheys were not in court nor were they represented. Thereupon, on the morning of the 12th of January Judge DeSelm entered an order to the effect that, the Faheys not appearing, the child be placed in the custody of the father until the further order of the court. On the same morning one of the attorneys for the Faheys, having been advised of the happenings on the previous night, communicated from Chicago by long distance telephone with the clerk of said court in Kankakee county and was advised that said order of Judge DeSelm had already been entered. Later, on the same day, the Faheys, by said attorney, filed a written motion to vacate said order. The motion was argued before Judge DeSelm and McCaffrey appeared and opposed its allowance, whereupon the court took the motion under advisement, and on February 14, 1923, entered an order vacating the order of January 12, and further ordered that the child be restored to the Faheys forthwith. Up to the time of the entry of the contempt order of March 14, 1923, now in question, Roy Burr and Mrs. Denis Burr, although requested, have failed to restore the child to the Faheys and it has not been so restored.

"There is no denial of the material facts as above outlined in either of the separate answers of McCaffrey and McDonnell. They endeavor rather to justify their actions, and they disclaim any intent of committing any contempt of the superior court (Judge Pam).

"In the answer of McCaffrey he states many conclusions and many of his 'beliefs.' He alleges, in substance, that he was first retained as the attorney for Roy Burr after the writ of error suit had been commenced in this Appellate Court to reverse Judge Miller's order and was afterwards employed to represent him in the *habeas corpus* proceedings before Judge Pam; that he examined the transcript of the record, then on file in this Appellate Court, of the proceedings before Judge Miller; that from said transcript he 'observed' that in a purported copy of the original petition for adoption filed in the county court there was no allegation that Roy Burr was not a fit or desirable person to have the custody of the child or that Roy Burr had abandoned the child, and that in his opinion the petition did not sufficiently allege the existence of conditions and requirements necessary for the county court 'lawfully' to take from a natural parent the custody of his child; that he observed from another paper contained in said transcript the statement that the adoption decree had been entered on May 27, 1922, (instead of the correct date, June 27,) and that the amendment to the adoption petition (to the effect that Roy Burr had abandoned the child) had been made after May 27; that on account of these observations he believed that the county court was without jurisdiction to enter the adoption decree, and that he did not receive any information contrary to said observations until after the disposition of the proceedings before Judge DeSelm in Kankakee county. He does not state that he ever examined the records of the county court to ascertain when the amendment to the adoption petition was in fact filed and the actual date of entry of the decree. He further states that he observed from said transcript that in the proceedings before Judge Miller the judge had held that the county court's decree of adoption was null and void for want of jurisdiction and had ordered the child placed in the custody of its father. He admits that he appeared as attorney for Roy Burr and Mrs.

Denis Burr in the proceedings before Judge Pam and on
their behalf filed a plea denying the court's jurisdiction and
made arguments in support of that contention and as to
the effect of the *supersedeas* granted in said writ of error
suit.   He sets forth as 'Exhibit A' to his answer a transcript
of certain statements made by him and the court during the
argument, and alleges that he was 'convinced' that the order
as finally entered by Judge Pam 'was a nullity.'   He fur-
ther alleges that when the proceedings were commenced be-
fore Judge DeSelm the child had actually been transferred
to the Faheys and the proceedings before Judge Pam had
been 'finally determined.'   He admits that after the termi-
nation of the proceedings before Judge Pam he and Mc-
Donnell, as attorneys for Roy Burr, filed the *habeas corpus*
petition before Judge DeSelm in Kankakee county, and al-
leges that on the hearing he 'informed the court fully and
accurately of the prior proceeding relevant to the cause.'
He sets forth as 'Exhibit B' to his answer a transcript of
the proceedings before Judge DeSelm, showing what state-
ments he made at that hearing.   This exhibit does not
disclose that the court was advised of the prior adoption
proceeding or of the entry of the adoption decree.   He fur-
ther alleges that he did not obstruct or interfere with the
'process' of the superior court at any time; that in filing
said petition before Judge DeSelm he acted in the 'sincere
belief' that he had the right, and it was his duty, to seek
to maintain the status of the child as established by the
order of Judge Miller and to seek a determination before
Judge DeSelm of the question whether Judge Pam had not
exceeded his power and jurisdiction in restoring the child
to the Faheys, in view of the fact that Judge Miller's order
was then in force and effect and had not been reversed, and
that he 'had no intent to conceal' any material fact from
Judge DeSelm.   He further alleges that in thus question-
ing the jurisdiction of Judge Pam he 'did not intend to re-
flect' upon the superior court or said judge; that he was

not contemptuous or disrespectful to the court in any way; that he believed that the justice of the cause was with the child's father, who was a fit person to have the custody of the child; that the father and the grandmother were nearer and dearer to the child than the Faheys, the uncle and aunt of the child's mother, and that it would be for the child's best interest that the father be given its custody; and that he at all times had the greatest respect for the dignity of said superior court.

"Similar allegations are contained in the answer of Frank McDonnell. He states, in substance, that he knew nothing about the litigation concerning the custody of the child until January 9, 1923, when he was employed by McCaffrey; that the latter informed him of all prior proceedings and what he (McCaffrey) had observed from his examination of said transcript on file in this Appellate Court; that after several conferences with McCaffrey, and after examining many legal authorities, he 'concluded' that Judge Pam had no power or jurisdiction to review or in any manner impair the order entered by Judge Miller, which then stood unvacated and unreversed; that he did not interfere at any time with the deliberations of Judge Pam or the 'process' of the court; that on January 10, 1923, after Judge Pam had entered his order, the child was given into the custody of the Faheys, and thereby the proceedings before Judge Pam were 'finally determined;' that it then 'appeared clear' to respondent that it was proper to test in some manner which of the two orders (Judge Miller's or Judge Pam's order, both of the superior court,) was entitled, as a matter of law, to respect and obedience, and that 'the only expeditious way of determining that question, and the only way that would be of practical consequences to the parties involved,' was to submit the matter upon petition for *habeas corpus* 'to the circuit court of Kankakee county;' that he assisted in the preparation of said petition, 'and in said petition alleged that said Robert Burr was not

detained by virtue of any judgment or decree of any court of competent jurisdiction;' that said allegation was 'general in form' and 'was not intended to conceal' the fact of the entry of Judge Pam's order, but 'seemed to respondent to be just as efficient to raise the question to be presented' as though the proceedings before Judge Pam and his order had been set up in detail and in full, and at the time said petition was drafted it was respondent's 'understanding and intention' that 'the question of the validity' of Judge Pam's order would be presented to Judge DeSelm so that he might pass upon it; that respondent was present on January 12 at the hearing before Judge DeSelm, at which time Mc-Caffrey 'informed the court fully and accurately of the prior proceedings relevant to the cause,' as appears from said transcript of the proceedings ('Exhibit B'); that in filing said petition before Judge DeSelm as an attorney for Roy Burr respondent 'acted in the sincere belief' that he had the right, and it was his duty, to seek to maintain the status of the child as it had been established by the order of Judge Miller, and that he had the right before Judge DeSelm to seek the determination of the question whether Judge Pam by his order had not exceeded his power and jurisdiction, and that he (McDonnell) 'had no intent to conceal' from Judge DeSelm any fact material to the determination of the question, and that he (McDonnell) gave to said circuit court 'all of the information pertinent to the inquiry there that came to his mind relevant to the issues there presented.' He further states that in thus questioning the jurisdiction of Judge Pam he did not intend to reflect upon said superior court or said judge; that in doing said matters and things he was not contemptuous or disrespectful in any way, and that he had had the greatest respect for the dignity of said superior court.

"In the contempt order in question the court made full findings of fact, and further found, in substance, that the child was not then in its jurisdiction; that neither respond-

ent had offered to disclose its whereabouts or to assist the court in restoring it to the Faheys; that said circuit court of Kankakee county was not advised of said adoption proceedings in the county court; that the *habeas corpus* writ was issued by said circuit court by virtue of the allegations contained in the petition; that respondents, at the time they filed the *habeas corpus* petition in said circuit court, well knew of said adoption proceedings and that the petition in said adoption proceedings had been amended before the adoption decree had been entered by the county court, and that the filing of the petition in said circuit court of Kankakee county by respondents 'without making to said court a full disclosure in said petition, or otherwise, of all the facts, constituted an obstruction to justice and to the orderly administration of justice;' that 'the maintenance and prosecution of said cause by the respondents, as attorneys for said Roy Burr, constituted an abuse of the process of the court, an open violation of the decree of this court and a breach of the duties which said respondents owed to this court, as attorneys and counselors of this court, and that said respondents, Eugene McCaffrey and Frank McDonnell, are in contempt of this court.'

"Since the entry of the contempt order in question this Appellate Court (in said writ of error suit prosecuted to reverse Judge Miller's order) on June 26, 1923, reversed Judge Miller's said order. In the opinion (case No. 28292, not yet published,) this court held, in substance, that the county court in the adoption proceedings had power and jurisdiction to enter the adoption decree, and that Judge Miller was without power to enter his order awarding the custody of the child to the father in a *habeas corpus* proceeding."

We are not impressed with the answer of plaintiffs in error that when they presented the petition to Judge DeSelm they informed him of all matters they felt he should know or that were relevant to the relief asked. The petition

simply alleged petitioner was the father of the child, that the child was restrained of his liberty by John and Mary Fahey, and that he was not detained by virtue of any judgment or decree of any court of competent jurisdiction. It further alleged that in August, 1922, in a proceeding in the superior court of Cook county the custody of the child was awarded petitioner by Judge Miller. No mention was made in the petition of the adoption proceeding in the county court nor of the fact that a writ of error had been sued out of the Appellate Court to review the judgment of Judge Miller and that the writ had been made a *supersedeas,* nor was any mention made in the petition of the proceeding before and judgment of Judge Pam. At the hearing before Judge DeSelm the morning of January 12 it was developed that a writ of error was pending for review in the Appellate Court of Judge Miller's judgment and that a *supersedeas* had been granted, and Judge DeSelm was informed of the proceeding before and judgment of Judge Pam, but no mention was made in any manner of the adoption proceeding. Judge DeSelm questioned the petitioner, and he testified he was the father of Robert Burr; that his wife secured a divorce in 1917 and the court awarded her the custody of the child; that there was no charge in the bill that the petitioner was an unfit person to have the custody of the child; that the mother and child went to the Faheys and lived there until the wife's death; that the child was kept by the Faheys until the order of Judge Miller in August, 1922. Petitioner testified after the death of his wife the Faheys refused to give him the custody of the child and secreted him away where petitioner could not find him, but he finally got possession of him by order of Judge Miller and Judge Pam awarded his custody to the Faheys.

It seems rather absurd to say the failure of plaintiffs in error to inform Judge DeSelm of the adoption proceeding or refer to it in any way was because of their belief it was irrelevant and unimportant. We cannot resist the con-

viction that the failure to inform Judge DeSelm of these matters, the statement of petitioner that he had not been charged in the divorce bill with being an unfit person to have the custody of his child when he knew he was so charged in the petition in the county court for adoption, and that the decree found the allegations of the petition were true and that he was unfit to have the custody of the child and had abandoned it, was because they feared it would defeat their purpose to get the boy away from the Faheys and secrete him. The real grounds of justification relied upon by plaintiffs in error are, that Judge Miller and Judge Pam were judges of courts of equal jurisdiction and neither had jurisdiction to review or set aside or disregard a judgment of the other on the same question and between the same parties; that Judge Miller had jurisdiction of the parties and the subject matter when he entered his judgment, and that judgment was final and conclusive until reviewed and set aside by a reviewing court. Until that was done Judge Pam had no jurisdiction to render a contrary judgment as to the custody of the child. It is true, plaintiffs in error in their answer say that because of discrepancies they observed in the transcript of the record in the Appellate Court they believed Judge Miller was justified in holding the county court had no jurisdiction to render the decree in the adoption proceeding and that his judgment would be affirmed. Since the judgment was rendered in this case the Appellate Court has decided the writ of error from Judge Miller's judgment, and held the adoption proceeding in the county court was regular in all respects, that the county court had jurisdiction of the subject matter and of the parties, and that its decree was valid, (*People v. Fahey,* 230 Ill. App. 143,) but the only effect, if any, that decision has is to show the inaccurateness of the transcript of the record if plaintiffs in error read it correctly. Judge Miller's judgment was not void and was entitled to respect and obedience until reviewed and reversed by a re-

viewing court, unless the circumstances and conditions had changed since the rendition of the judgment.

In a *habeas corpus* proceeding for the custody of a child the order of a court having jurisdiction is final and binding upon the parties under the same facts and so long as the same conditions exist as did at the time the order was made. Upon that subject this court said in *Sullivan* v. *People,* 224 Ill. 468: "Chapter 65 of the Revised Statutes purports to cover the whole subject of the law in relation to *habeas corpus.* It creates a complete code of procedure, prescribing what the petition shall contain, the form of the writ and how it shall be served, and providing for the return and hearing. It not only fails to provide for an appeal but contemplates second applications and writs, and places limitations upon the power of the court on a second writ which are inconsistent with the intention to allow an appeal. If it should be held that the statute authorizes an appeal the right would be an absolute one, by which the execution of the order would be stayed and an illegal detention might perhaps be continued contrary to the intent of the Habeas Corpus act. An order in a *habeas corpus* proceeding for the custody of a child is held to be final for the purpose of a writ of error only in the sense that the parties are concluded under the particular circumstances existing when the order is made. The order is final when pronounced but may not be final at any subsequent time, and its finality afterward is to be determined not from its character but from extrinsic proof. If there is any change in the conditions and circumstances the order is not final or conclusive and the parties are free to try the issue again upon a second application." (See, also, *Cormack* v. *Marshall,* 211 Ill. 519.) The petition presented to Judge Pam did allege a change in conditions and circumstances of the child. The petition presented to Judge DeSelm did not. The changed circumstances set out in the petition before Judge Pam were that the child, Robert Burr, had been

removed from the jurisdiction of the court to Kankakee county; that his father was residing in Chicago, was an unfit person to have the custody of the child and was not situated so he could properly provide for, maintain and care for the child; that he had abandoned the boy and the boy was not receiving proper care and treatment. Judge Pam had jurisdiction of the parties and of the subject matter of *habeas corpus,* and whether he had the power to render the particular judgment he did render did not depend wholly upon whether Judge Miller had jurisdiction to render the judgment he rendered. We have seen the authorities hold that in a *habeas corpus* proceeding for the custody of a child the parties are not bound by a previous judgment if there is a change in circumstances and conditions but are at liberty to try the issue at a second application. Whether Judge Pam was correct in rendering the judgment he did render, it was not void even though it may have been erroneous. The judgment might have been reviewed upon writ of error but could not be reviewed by another *habeas corpus* proceeding in another court of the same jurisdiction where the facts, circumstances and conditions remain the same. *People* v. *Siman,* 284 Ill. 28.

When all the acts and conduct of plaintiffs in error are considered we cannot escape the conclusion that they intentionally sought to embarrass and obstruct the administration of the law and justice. The fact that about a month after Judge DeSelm issued the writ he recalled it, set aside the order awarding the custody of the child to the petitioner and awarded its custody to the Faheys strongly indicates, if it does not show conclusively, that he would not have issued the writ and made the order if he had been fully informed of all the facts. Plaintiffs in error resisted the motion to set aside the judgment. The order to restore the custody of the boy to the Faheys, it is conceded, was not complied with and his whereabouts are unknown to the

Faheys. Plaintiffs in error claim they should not be held responsible for the failure of their client to return the boy to the Faheys. The conclusion is warranted from all the facts that plaintiffs in error, in disregard of the dignity and authority of the court, intentionally sought to embarrass and obstruct the administration of justice. Even if they believed, as they now assert, that justice was with their client, there was an orderly way to proceed to secure it.

If the acts of a person charged with contempt of court are inconsistent with his alleged intention, and if the acts charged and proved or not denied amount to a contempt, the answer alleging the party charged intended no contempt will not purge him. (*People* v. *Severinghaus,* 313 Ill. 456; *People* v. *Seymour,* 272 id. 295.) An attorney's zeal to serve his client should never be carried to the extent of causing him to seek to accomplish his purpose by a disregard of the authority of the court or by seeking to secure from a court an order or judgment without a full and frank disclosure of all matters and facts which the court ought to know. Unless lawyers, who are officers of the court, show respect to its orders and judgments how can it be expected that laymen will do so? While the judgment against plaintiffs in error is to them a serious matter and it is an unpleasant duty to affirm it, we would feel recreant to our duties and obligations to the profession and the public if we approved acts of lawyers like those of plaintiffs in error in this case. Courts and lawyers do make mistakes and err in judgment, but we cannot regard the acts of the plaintiffs in error simply as a mistake or error in judgment.

The judgment is affirmed.                 *Judgment affirmed.*