PETER ECKEL, Plaintiff-Appellee, v. CHARLES V. BYNUM *et al.*, Defendants-Appellants.

First District (5th Division)   No. 1—91—2006

Opinion filed December 11, 1992.

David Delgado, of Burch & Delgado, of Chicago, for appellants.

Nancy A. Thill, of Joan M. Ferraro & Associates, of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

This action was brought to foreclose a mortgage. The trial court entered a judgment of foreclosure for Gurpreet Padda, the plaintiff in the trial court. Defendants, Charles V. Bynum and Carol E. Bynum, appeal from the trial court's judgment of foreclosure.

On January 22, 1973, Charles V. Bynum and his wife, Carol E. Bynum, executed a trust deed and installment note to their apartment building located at 5436 West Ferdinand, Chicago, Illinois. The statement "This is a Part Payment Junior Purchase Money Mortgage" appeared on the trust deed. On the note attached to the trust deed is typed, "This Instalment [sic] Note is secured by a Junior Purchase Money Mortgage." On the trust deed, Charles and Carol Bynum are referred to as "Mortgagors" and the Chicago Title and Trust Company is referred to as "Trustee." The trust deed refers to Reinhold Casper and his wife, Ruth B. Casper, as the persons that the installment note is paid to the order of. The installment note is made payable to the order of Reinhold Casper and Ruth B. Casper, and signed by Charles V. Bynum and Carol E. Bynum. The Bynums promised to pay to the order of the Caspers the principal sum of $37,000 with an interest rate of 7½% per annum in installments of $343 or more per month, beginning February 1, 1973, until the note is fully paid.

On April 25, 1989, for "Value Received," Reinhold Lee Casper as personal representative of the estate of Ruth Casper, deceased, conveyed, transferred and assigned Ruth Casper's interest in the trust deed and installment note to Gurpreet Padda (Padda).

Padda filed a complaint for foreclosure. On September 16, 1989, Carol Bynum (Carol) was personally served by a Cook County sheriff with summons and plaintiff's complaint for foreclosure. Charles Bynum (Charles) was served with summons and plaintiff's complaint for foreclosure by a Cook County sheriff, by substitute service on his wife, Carol, on September 16, 1989. On October 10, 1989, Charles

filed an appearance which stated that "The undersigned, as attorney, enters the appearance of the defendant [*sic*], Charles V. Bynum and Carol E. Bynum." Charles is not an attorney.

On November 29, 1989, plaintiff brought a motion to strike "defendants' answer" which had previously been filed. Plaintiff's attorney, Jack Levin, and Charles appeared on the record. The trial court granted defendant 14 days to respond to the motion and set the matter for hearing on December 21, 1989. The defendants' answer does not appear in the record on appeal.

On December 21, 1989, Jerome Kornfeld, an attorney, appeared as attorney for Charles. An order was entered which stated that "Jerome Kornfeld be given leave to file his appearance on behalf of Charles and Carol Bynum." The order also allowed plaintiff leave to amend the complaint, gave defendants 14 days to file a response to plaintiff's motion to strike and dismiss defendants' answer to the complaint, and gave defendants 14 days to respond to plaintiff's motion to place mortgagee in possession. Finally, the order set the matters for hearing on January 17, 1990, "without further notice." The order is signed by the trial judge with a handwritten date of October 21, 1989, over his signature. However, the clerk's stamp bears the date December 21, 1989. On January 4, 1990, an appearance was filed on behalf of Charles. The appearance was signed by another individual "for Jerome Kornfeld."

On February 22, 1990, Padda's attorney filed a notice of motion that had been served upon Kornfeld & Associates moving the court for leave to amend the complaint *instanter* by amending paragraphs 2(j) and (k). Plaintiff also sent a notice of motion to Kornfeld & Associates, wherein the plaintiff moved "the Court for a hearing instanter on Plaintiff's Motion for Mortgagee in Possession Appointment as well as Plaintiff's Motion to set the matter for a trial on a date certain." On that date, the trial court entered an order which provided that plaintiff be given leave to amend the complaint *instanter* and that defendants be given 28 days to file an amended answer or otherwise plead.

On March 1, 1990, plaintiff filed a copy of the notice of motion that had been sent to Kornfeld & Associates which indicated that the plaintiff was going to present an emergency motion for appointment as mortgagee in possession. Said motion was continued to April 2, 1990, for hearing. In addition, defendants were given 10 days to file an answer to plaintiff's amended complaint.

On April 2, 1990, the trial court entered an order which, among other things, (1) granted plaintiff's motion to place mortgagee in pos-

session; (2) allowed Charles to remain in occupancy of his unit; (3) allowed Padda to collect all rents from all the tenants; and (4) provided that said rental income is to be used for the maintenance, upkeep and necessary repairs to the building, as well as utility expenses. In addition, Padda was ordered not to make any repairs or incur expenses in excess of $1,000 without prior permission from the court. The order further provided that the plaintiff shall provide the court with an accounting of income received and expenditures incurred every 90 days.

On June 21, 1990, Padda filed a motion seeking an order allowing him to repair the premises and to incur expenses in excess of $1,000. The trial court entered an order that (1) granted plaintiff leave to file an exhibit and/or affidavit in support of his motion; (2) granted defendant leave to file a response to plaintiff's motion; and (3) set the matter for hearing on June 28, 1990. On June 28, 1990, the matter was continued to July 10, 1990.

On July 10, 1990, plaintiff filed a notice of motion which had been sent to Kornfeld & Associates, Charles, and Daryl Barry, attorney at law. The notice of motion indicated that plaintiff was going to move the court for the entry of an order of default against Charles. After hearing, the trial court entered an order which granted Padda leave to make those repairs and expenditures as set forth in its motion. Padda's affidavit indicates that $3,200 was required for the replacement and installation of hot water tanks and pipes; that the gas service had been cut off, the current gas bill was approximately $4,000 to $5,000 and that in order to reinstate service People's Gas was requiring the payment of approximately $2,000; there was a charge for $1,400 for waste disposal services. The order further held that "Defendant is in default due to his failure to answer or otherwise plead in response to plaintiff's amended complaint." The matter was set for prove up on August 17, 1990, with "notice to be given to defendant." On August 17, 1990, the matter was continued to August 29, 1990, without further notice.

On August 29, 1990, a judgment of foreclosure was entered against the defendants in the amount of $83,198.63. At the hearing on August 29, 1990, plaintiff's attorney tendered to the court the trust deed, note, assignment, the original complaint, the amendment to the complaint and a judgment of foreclosure. The court instructed plaintiff's attorney to prepare a face sheet for the amended complaint and granted plaintiff leave to file the amendment to the complaint updating the figures. The judgment of foreclosure indicates that the rights of redemption shall expire on November 27, 1990.

On January 23, 1991, Berton M. Ring filed a motion for leave to file an additional appearance for the plaintiff. Said motion was granted on February 8, 1991. On January 23, 1991, Berton Ring filed a motion for possession and other alternative relief. Paragraphs 4 and 5 of this petition stated, "Charles Bynum is residing at 5436 West Ferdinand, Chicago, Illinois unit #1 *** Mr. Bynum's rent is $430.00 per month and he has not paid any rent since the mortgagee has been placed in possession on April 2, 1990." Paragraph 6 stated, "Currently, rent is owed for the months of February 1990 through the January 31, 1990 [sic] totaling $4,300 in back due rent."

On February 15, 1991, the trial court granted plaintiff "possession of the units occupied by Charles and Carol Bynum, with the order of possession stayed 5 days until 2/10/91 without further notice, if rent in the amount of $430.00 for February 1991 rent is not received within these five days." The court also ordered that "[t]he order of April 2, 1990 is modified to reflect this change." An additional order dated February 15, 1991, ordered that (1) Charles shall pay the sum of $430 for February rent within five days, (2) Jerome Kornfeld was given leave to withdraw as counsel for defendant, and (3) Daryl Berry was given leave to file his appearance as substitute counsel for defendant, *instanter*. Daryl Barry never filed an appearance in this case.

On February 28, 1991, plaintiff presented a motion to amend judgment of foreclosure, alleging that the plaintiff had expended an additional sum of $37,731.02, since the entry of the foreclosure judgment. The plaintiff prayed that the judgment of foreclosure be amended to reflect the judgment in the amount of $122,108.74. The itemized statement of expenses showed expenditures in excess of $1,000 and contrary to the order of the trial court that the court's permission was necessary for expenditures in excess of $1,000. For example, expenditures were listed for $1,850, $7,450, $1,100, $1,248.36, $3,000, and $19,128.64. The trial court granted plaintiff leave to amend paragraph 2(a) of the judgment of foreclosure to reflect a judgment of $120,929.65. The trial court denied defendants' motion to strike or dismiss. The record on appeal does not contain a notice of motion to amend the judgment of foreclosure or a transcript of the proceedings on February 28, 1991.

An amended paragraph 2(a) of the judgment of foreclosure was filed March 5, 1991, reflecting a total of $120,929.65.

On March 6, 1991, a sheriff's sale was held wherein Peter Eckel, Gurpreet Padda's partner, bid $120,929.65 and the property was

deeded to Gurpreet Padda. David Delgado, an attorney, entered an additional appearance on behalf of Charles and Carol.

On March 15, 1991, Padda filed a motion to confirm sale and for an order for possession. According to the sheriff's report of sale and distribution filed March 15, 1991, Padda's bid left a deficit of $4,522.94.

Defendants filed various motions including a motion to vacate the judgment and/or an order for possession and for other relief and a motion to quash and/or vacate the judicial sale of March 6, 1991. Padda also filed a motion to substitute the name of Peter Eckel for the named plaintiff. That motion was subsequently withdrawn at the hearing on May 14, 1991.

On May 14, 1991, after the parties had briefed their various motions and argument was heard, the court entered an order which: (1) denied defendants' motion to vacate the judgment/order of possession; (2) allowed the possession order against Bynum to remain standing; (3) denied defendants' motion to quash and vacate the judicial sale; and (4) granted plaintiff's motion to confirm the judicial sale. The order entered did not enter a deficiency judgment against either of the defendants. The transcript of the hearing discloses that when the trial court denied the motion to vacate the judgment, the court found that "[t]here was a default order entered against Mrs. Bynum."

On May 17, 1991, the trial court denied the defendants' emergency motion to reconsider the court's denial of defendants' motions, ordered that there was no just reason to delay the enforcement of the judgment, and stayed the order of eviction for 30 days.

On July 2, 1992, Padda transferred all his interest in this property by warranty deed to Dr. Peter Eckel, who is the named plaintiff on appeal.

Defendants appeal from the trial court's orders of May 14, 1991, and May 17, 1991, and present the following issues for review: (1) whether a foreclosure sale predicated upon a partial assignment is valid; (2) whether the entry of a foreclosure against Carol Bynum by default was and is a nullity as a result of plaintiff's failure to comply with Supreme Court Rule 105 (134 Ill. 2d R. 105); (3) whether Padda still had an interest in the judgment of foreclosure which allowed him to bid the judgment of foreclosure at the foreclosure sale to obtain a title to defendants' real property; (4) whether the foreclosure sale is void due to plaintiff's alleged failure to comply with section 15—1507(c) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 15—1507(c)); and (5) whether the plaintiff could charge the defendants with repairs on the premises when the alleged repairs ex-

ceeded the amount that the court allowed without further order of court.

For the following reasons, we must affirm in part and remand in part for a factual determination on one of the issues.

## I

The defendants argue that the foreclosure judgment is invalid because it is predicated on a partially assigned installment note and trust deed. The original mortgagees of the note and trust deed were Reinhold Casper and Ruth B. Casper. Defendants maintain that the purported assignment only contains an assignment of the interest of Ruth B. Casper and is therefore a partial assignment.

The plaintiff maintains that Reinhold Casper predeceased his wife, Ruth B. Casper, and upon his death his interest transferred to Ruth B. Casper by operation of law since the property was held in joint tenancy. Since there is no joint tenancy mentioned on either the trust deed or the installment note, we find no merit to this contention.

However, the plaintiff also argues that even if the parties did not hold the trust deed and note as joint tenants, Reinhold Casper's interest in the trust deed and note transferred to Ruth Casper upon his death pursuant to his will. The plaintiff maintains that, accordingly, at the time of Ruth Casper's death, she owned all of the rights, title and interest in the trust deed and note. On April 25, 1989, Reinhold Lee Casper, as personal representative of the estate of Ruth Casper, deceased, assigned all rights, title and interest under a trust deed dated January 22, 1973, executed by Charles and Carol to Padda. A copy of Reinhold Casper's will was not attached to any of the pleadings.

■ Plaintiff argues that the defendants have admitted that plaintiff is the sole mortgagee of the trust deed and note, because they were held in default for failing to answer plaintiff's complaint. In paragraph 3(n) of the complaint to foreclose mortgage, plaintiff alleged:

"Capacity in which Plaintiff brings this suit: Plaintiff is the holder and assigned of the rights, title and interest under the Trust Deed an installment Note secured by said Trust Deed as assigned by Reinhold Lee Casper, Personal Representative of the Estate of Ruth E. Casper; and the security given therefore, and the indebtedness thereto."

Plaintiff maintains that the defendants admitted this allegation when they were held in default on July 10, 1990.

Well-pleaded allegations of a complaint are considered admitted by a defendant when held in default for failure to plead to the complaint. (See *Colonial Penn Insurance Co. v. Tachibana* (1977), 53 Ill. App. 3d

981, 369 N.E.2d 177; *Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 557, 281 N.E.2d 462.) Accordingly, defendants admitted the well-pleaded allegations of the complaint when they were held in default, including the allegation that Padda held the entire interest in the subject property.

Plaintiff also argues that the defendants have waived their right to argue Padda's capacity, because they failed to raise this affirmative defense by answer or other pleading. Pursuant to section 2—613(d) of the Illinois Code of Civil Procedure, if the defendant seeks to assert an affirmative defense, he must specifically plead it in the answer or reply (Ill. Rev. Stat. 1991, ch. 110, par. 2—613(d)) so the plaintiff is not taken by surprise. If defendant fails to timely plead the affirmative defense, he is deemed to have waived the defense and the defense cannot be considered, even if the evidence suggests its existence. *First National Bank v. Village of Mundelein* (1988), 166 Ill. App. 3d 83, 90, 519 N.E.2d 476, 481.

Defendants first raised this capacity defense on April 5, 1991, nine months after the judgment of foreclosure was entered and 19 months after the complaint was filed. Plaintiff argues that had defendants raised this defense at the pleading stages, plaintiff could have easily produced Reinhold Casper's will which proves that Reinhold Casper's entire estate passed to his wife, Ruth B. Casper, upon his death. We find that defendants have waived their right to raise this affirmative defense because they failed to raise it by pleading in a timely fashion.

## II

■ The defendants argue that the entry of the default foreclosure was and is a nullity because the plaintiff amended his foreclosure suit in a substantive manner without complying with Supreme Court Rule 105. Supreme Court Rule 105 provides in pertinent part:

> "If new or additional relief, whether by amendment, counterclaim, or otherwise, is sought against a party not entitled to notice under Rule 104, notice shall be given as herein provided. *** It shall state that a pleading seeking new or additional relief against him has been filed and that a judgment by default may be taken against him for the new or additional relief unless he files an answer or otherwise files an appearance ***."
> 134 Ill. 2d R. 105(a).

According to the return of summons, Carol was personally served with summons on September 16, 1989. Charles was served with summons by substitute service on his wife on the same date. On October

16, 1989, Charles entered an appearance which stated, "The undersigned, as attorney enters the appearance of the defendant [*sic*] Charles V. Bynum & Carol E. Bynum." Charles is not an attorney. Subsequently, Jerome Kornfeld was given leave to file his appearance on behalf of Charles and Carol Bynum. Kornfeld only entered an appearance on behalf of Charles.

Rule 105 applies to parties who are in default—those who have not appeared either personally or by counsel. (*Public Taxi Service, Inc. v. Ayrton* (1973), 15 Ill. App. 3d 706, 711, 304 N.E.2d 733.) Ordinarily, a party who has not appeared need not be served with notices of motions; however, if relief is sought from the party other than that requested in the complaint, the party must be notified. *Public Taxi Service, Inc.*, 15 Ill. App. 3d at 711-12.

Any action taken by a litigant which recognizes the case as being in court will amount to a general appearance unless such action was for the sole purpose of objecting to the jurisdiction over his or her person. (*Lord v. Hubert* (1957), 12 Ill. 2d 83, 145 N.E.2d 77; see also *Mauro v. Peterson* (1984), 122 Ill. App. 3d 466, 461 N.E.2d 564.) Generally, notice to an attorney is notice to the client and knowledge of an attorney is knowledge of, or imputed to, the client, notwithstanding whether the attorney has actually communicated such knowledge to the client. *In re Marriage of Mierlak* (1981), 100 Ill. App. 3d 228, 426 N.E.2d 1010.

The determinative question which this court is not able to answer on the record before us is whether or not Kornfeld was Carol's attorney when he appeared in court on December 21, 1989, and various dates thereafter. The question of whether Kornfeld was acting as Carol's attorney is a factual question, and one which the trial court did not address. Therefore, we remand to the trial court with directions to receive such evidence as it deems necessary and make a factual determination on this issue.

An attorney who has filed an appearance is chargeable with notice of all orders affecting pending causes; notices served on him are notices served upon the client. *Public Taxi Service, Inc. v. Ayrton* (1973), 15 Ill. App. 3d 706, 304 N.E.2d 733.

"Whether or not an attorney-client relationship exists involves principles of contract and agency." (*Foley v. Metropolitan Sanitary District* (1991), 213 Ill. App. 3d 344, 351, 572 N.E.2d 978.) In *Foley* the court expressed concern that the plaintiff had completely failed to provide in the record any affidavit or sworn statement stating that he did not believe King was his attorney, and the reasons therefor. In the record before this court, we find no affidavit or sworn statement by

Carol that Kornfeld was not acting as her attorney when he allegedly appeared on her behalf.

The court in *Foley* further stated:

> "Generally, where an attorney appears of record for a party, the presumption is that the appearance in such capacity was duly authorized by the person for whom the attorney appears. [Citations.] The presumption may be rebutted by evidence to the contrary. [Citation.] Also, an attorney's authority to appear may be implied or apparent authority and may arise from the circumstances and facts where there is a reasonable appearance, due to the acts of another, that the person is authorized to act as agent for such other person." *Foley*, 213 Ill. App. 3d at 353.

It is a question of fact as to whether the trier of fact believes that the attorney's appearance was unauthorized. (*Mierlak*, 100 Ill. App. 3d at 231.) In *Mierlak*, an attorney reported to the court that he had been engaged by respondent's brother; the respondent failed to offer affidavits or testimony from his brother or the attorney that the appearance was not authorized, and offered only his own denial, which was insufficient to rebut the presumption of authorization.

When Kornfeld appeared on December 21, 1989, he was granted leave to file an appearance on behalf of both the Bynums and was granted time to respond to various pending motions on behalf of the defendants. The appearance form filed by Kornfeld on behalf of Charles was not signed personally by Kornfeld, but rather by another individual on his behalf. Charles and Carol are husband and wife and were living together at the time of these proceedings. Carol also appeared in court with Charles at times during the pendency of the case. This issue was not raised until nine months after the judgment was entered. Plaintiff argues that defendants' argument that Kornfeld only represented Charles is illogical. We find it difficult to believe that a husband and wife, who are not estranged, would not be represented by the same attorney during a foreclosure proceeding; however, this remains a factual question for the trial court. Factually, we find this a difficult case. Since the parties were married, living in the same house and even came to court together, we would assume that Carol had notice of the various proceedings in this case; however, this does not obviate the need to properly serve Carol with notice. Moreover, if it is true that Kornfeld was only representing Charles, it is difficult to believe that he would not have advised either Carol or Charles that it was necessary for Carol to appear or have an attorney appear on her behalf.

Plaintiff argues that assuming Jerome Kornfeld did not represent Carol, she was not entitled to any notice of the ongoing proceedings because she was in default. The default order entered states that "defendant" is in default. However, the trial court specifically found at the May 14, 1992, hearing, that "there was a default order entered against Mrs. Bynum."

In addition, plaintiff argues that Supreme Court Rule 105 is not applicable to the facts in this case. Plaintiff indicates that although the record indicates that plaintiff was given leave to file an amended complaint, the record does not contain an amended complaint. At the hearing on August 29, 1990, the date the judgment of foreclosure was entered, plaintiff's attorney was given leave to file an amended complaint; however, the only amendment to the complaint was an update of the amount presently due on the note. The amendment did not have a face sheet and apparently was never filed with the court. Plaintiff argues that the amount due under the note was interest bearing and was increasing daily and that an increase in the amount of principal and interest due under the note is not new or additional relief in a mortgage foreclosure action and is certainly not the type of new or additional relief contemplated by Rule 105. Plaintiff also points out that the complaint in the present case sought a deficiency judgment against both defendants and Carol was given notice of that when she was served with the original complaint (a deficiency judgment was not entered against either defendant on May 14, 1991, the day the sheriff's sale was confirmed).

Supreme Court Rule 105 requires that notice be given to a party in default if new relief, or relief greater than that originally requested, is sought. (*Parrish v. Glen Ellyn Savings & Loan Association* (1990), 193 Ill. App. 3d 629, 633, 550 N.E.2d 43.) This does not mean that every amendment to a complaint comes within the notice provisions of this rule. (*Berkson v. Quality Beauty Supply Co.* (1976), 36 Ill. App. 3d 877, 344 N.E.2d 629 (not "additional relief" where amendment sought only to substitute the correct date of alleged occurrence).) A party has the right to assume that relief granted on default will not exceed or substantially differ from that asked for in the complaint, and thus the notice requirements of Rule 105 are designed to prevent litigants from obtaining new or additional relief without first giving a defaulted party a renewed opportunity to appear and defend. (*Palatine Savings & Loan Association v. National Bank & Trust Co.* (1980), 80 Ill. App. 3d 437, 399 N.E.2d 1015.) We agree with plaintiff in that the note was interest bearing and an increase in the relief sought as a result of the increasing interest in a foreclosure

case was not the type of new or additional relief as contemplated by Rule 105. However, the complaint originally sought a judgment of $55,568.87. Ultimately, the plaintiff filed an amended paragraph 2(a) of the judgment of foreclosure seeking $120,929.65, said amount including $37,731.02 in expenditures by the mortgagee in possession. The judgment amount more than doubled, increasing in excess of $60,000. We believe that this is the type of additional relief as contemplated by Rule 105.

For the reasons set forth above, we remand the matter to the trial court for a factual determination as to whether Jerome Kornfeld was acting as Carol's attorney. If the trial court finds that he was acting as her attorney and thus received appropriate notice, we affirm the decision of the trial court. However, if he was not acting as her attorney, Carol was entitled to notice pursuant to Supreme Court Rule 105 and, accordingly, we must find that the judgment of foreclosure against Carol is void.

### III

■ The defendants argue that when Padda divested himself of the trust deed and installment note which the foreclosure suit was premised upon by quitclaiming all of his interest in the foreclosure suit by quitclaim deed to Peter Eckel, a person who was not a party to the foreclosure suit, the foreclosure suit was no longer a valid foreclosure suit.

The defendants argue that the "bid of the plaintiff at the foreclosure sale was made to embarrass and/or obstruct the orderly administration of justice." In support of this argument the defendants cite *People ex rel. Fahey v. Burr* (1925), 316 Ill. 166, 147 N.E. 47, and *People v. McCaffrey* (1924), 232 Ill. App. 462. (*Burr* is the Illinois Supreme Court case which affirmed *McCaffrey*.) The attorneys concealed from the trial court the existence of prior valid orders in an adoption proceeding and a *habeas corpus* proceeding awarding the custody to the adoptive parents, which would have prevented an order in favor of their client. The attorneys had represented the client in the earlier proceedings. This case is clearly distinguishable from the present case. We find no evidence in this record that either Padda or Eckel was attempting to embarrass and/or obstruct the orderly administration of justice.

Apparently, Padda and Eckel became partners and co-mortgagees in this property. On February 20, 1991, Padda quitclaimed his interest in the property to Eckel. The quitclaim deed was not recorded. Plaintiff asserts that it was not the intent of either Padda or his attorney

to transfer all of his interest in the property to Eckel. Plaintiff asserts that it was the intention of the parties that the deed was to be delivered, but not recorded, to act as security for the partners in that Padda was moving out of town and Eckel was going to manage the property. Plaintiff further argues that the relationship between Padda and Eckel is irrelevant to the issue of whether the sale was conducted fraudulently.

The trial court found that there was no prejudice to the defendants at the sale in that nothing existed to prevent the defendants from bidding at the foreclosure sale and nothing existed which changed their legal rights at the sale. Proof of actual injury resulting from the allegedly fraudulent misrepresentation is an essential element of actionable fraud. (*Shah v. Chicago Title & Trust Co.* (1983), 119 Ill. App. 3d 658, 457 N.E.2d 147.) Although Padda, Eckel or any of their various attorneys could have been more open with the Bynums, as well as the fact that Padda and Eckel could have found a more proper way to evidence their partnership, we find nothing in the record indicating an injury to the Bynums as a result of the conduct. This court finds no fraudulent conduct by either Padda or Eckel that could justify the vacation of the trial court's order of foreclosure, the sale, or confirmation of the sale.

## IV

■ The defendants argue that the judicial sale which took place on March 6, 1991, and any other dates was void due to plaintiff's failure to comply with section 15—1507(c) of Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 15—1507.) Defendants argue that after notice is given as required in section 15—1507, a copy thereof shall be filed in the office of the clerk of the court entering the judgment, together with a certificate of counsel or other proof that notice has been served in compliance with this section. Defendants maintain that plaintiff's certificate of mailing of notice stated that plaintiff's attorney mailed a copy of the publication for service by publication rather than a copy of the publication of the proposed foreclosure sale. Conversely, plaintiff maintains that the requirements of section 15—1507(c) were complied with and, therefore, the trial court did not err in refusing to vacate the sale. We note that the defendants were aware of the date of the sale as their attorney was present in court the morning of the sale presenting an emergency motion to have the sale stopped.

Plaintiff argues that the defendants were not entitled to notice pursuant to section 15—1507(c)(3), which states:

"The party who gives notice of public sale in accordance with subsection (c) of Section 15—1507 shall also give notice to all parties in the action *who have appeared and have not theretofore been found by the court to be in default for failure to plead.* Such notice shall be given in the manner provided in the applicable rules of court for service of papers other than process and complaint, not more that 45 days nor less that 7 days prior to the day of sale. After notice is given as required in this Section, a copy thereof shall be filed in the office of the clerk of the court entering the judgment, together with a certificate of counsel or other proof that notice has been served in compliance with this Section." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 110, par. 15—1507(c)(3).)

Plaintiff argues that since a default judgment was entered against the defendants for failure to plead, they were not entitled to notice pursuant to section 15—1507(c)(3). We agree.

Plaintiff further argues that even if defendants were entitled to notice pursuant to section 15—1507(c)(3), defendants must have complied with the procedures set forth in section 15—1508(c) of the Illinois Code of Civil Procedure in order to succeed on their motion to vacate the sale. (Ill. Rev. Stat. 1989, ch. 110, par. 15—1508.) Section 15—1508(c) provides:

"Failure to Give Notice. If any sale is held without compliance with subsection (c) of Section 15—1507 of this Article, any party entitled to notice provided for in paragraph (3) of that subsection (c) who was not so notified may, by motion supported by affidavit made prior to confirmation of such sale, ask the court which entered the judgment to set aside the sale, provided that such party shall guarantee or secure by bond a bid equal to the successful bid at the prior sale." (Ill. Rev. Stat. 1989, ch. 110, par. 15—1508(c).)

Defendants' motion to vacate the sale pursuant to section 15—1507(c) had an affidavit signed by Charles and Carol; however, there is no evidence in the record that the defendants ever secured a bond. Thus, even if the defendants were entitled to notice pursuant to section 15—1507(c), they were not entitled to relief since they did not comply with the provisions of section 15—1508(c).

## V

■ In their brief defendants also set forth an issue as to whether the plaintiff could charge the defendants with repairs on the premises when the alleged repairs exceeded the amount that the court allowed

without further order of the court. However, defendants made no arguments nor presented any authority in support of this issue. Although set forth in a brief, issues upon which no argument was made nor authority presented in support are waived for purposes of review. *(People ex rel. Daley v. Warren Motors, Inc.* (1985), 136 Ill. App. 3d 505, 516, 483 N.E.2d 427, 434; see also 134 Ill. 2d R. 341(e)(7).) We find that the defendants have waived this argument.

For all the reasons set forth above, we affirm the decision of the trial court that Padda had a proper interest in the trust deed. We find no merit to the defendants' allegations of fraud and we find that the plaintiff complied with sections 15—1507(c) and 15—1508 of the Illinois Code of Civil Procedure. However, we remand the matter to the trial court with directions to receive such evidence as is necessary to make a factual determination as to whether Jerome Kornfeld was acting as Carol Bynum's attorney. If Kornfeld was acting as Carol's attorney, we affirm the decision of the trial court. However, if Kornfeld was not acting as her attorney, the judgment of foreclosure against Carol is void.

Affirmed in part and remanded in part with directions.

LORENZ* and GORDON, JJ., concur.

*Justice Lorenz concurred in this opinion prior to his retirement.