Harriet Acosta, Plaintiff-Appellant, v. Joseph Burris, Jr., Defendant-Appellee.

Gen. No. 49,207.

First District, First Division.

March 30, 1964.

Arthur N. Hamilton, of Chicago, for appellant.

Jack Evans and Edward L. Kerpec, of Chicago (Edward L. Kerpec, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

Plaintiff appeals from an order vacating a default judgment for personal injuries and granting defendant leave to appear and defend. Defendant's motion and supporting affidavits, treated by the court and counsel as a petition filed under the provisions of section 72 of the Civil Practice Act, were based upon the theory that defendant was never personally served with summons.

The determinative question presented is whether valid service of summons was obtained on defendant. It is accepted in Illinois that "where a defendant has not been served with process, the court has no jurisdiction to enter a judgment against him." (Janove v. Bacon, 6 Ill2d 245, 249, 128 NE2d 706 (1955).) A sheriff's return is prima facie proof of service and can

be overcome only by clear and convincing proof. Since Ellman v. DeRuiter, 412 Ill 285, 106 NE2d 350 (1952) and its codification in the 1955 revision of section 72, a petition under that section is appropriate to question service of summons, and the sheriff's return may be contradicted by facts not before the court in the original case. (Lichter v. Scher, 4 Ill App2d 37, 123 NE2d 161 (1955); Isaacs v. Shoreland Hotel, 40 Ill App2d 108, 110, 188 NE2d 776 (1963).) It is in the light of these principles that we consider this record.

Plaintiff's complaint was filed on January 8, 1962, and the return on the summons shows personal service upon defendant, Joseph Burris, Jr., on January 11, 1962. An order of default was entered on January 22, 1962, and judgment was entered on February 9, 1962. An execution was issued, and the return shows personal service on defendant by the same bailiff, Louis B. Simon, on April 25, 1962. A second execution was served on defendant on August 9, 1962, and again by bailiff Simon. A capias ad satisfaciendum (body execution by order of court) was issued, and defendant was brought before the court on October 17, 1962. He was released on his individual bond, and a hearing "on motion to vacate judgment" was set for November 20, 1962. On that date, an order was entered striking defendant's motion to vacate judgment for want of prosecution. The order further found that defendant was guilty of contempt of court and directed that a writ of attachment be issued against defendant for contempt of court.

On February 28, 1963, defendant filed a motion and supporting affidavits to vacate the judgment and quash the summons. At a hearing held on March 21, 1963, counsel for defendant said: "We filed affidavits, Judge, which we stated defendant was not personally served. However, subsequently, he did receive the summons; he turned it over to his insurance carrier.

Apparently, they neglected it. Nothing was done. Judgment was entered and several executions have been taken out since."

Defendant testified that he never was served personally with summons in the matter. He stated that a summons was turned over to him by his porter, Aaron Swift, two weeks after January 11, 1962. He turned the summons over to his lawyer and then delivered it to his insurance broker. Swift testified that Louis Simon left a summons for defendant with him on January 11, 1962, which he forgot to deliver to defendant until "about a week later or better."

Louis B. Simon testified that he had been a deputy bailiff of the Municipal Court for fourteen years. He identified his signature on the original return made on the summons and recalled making "that service in this case." He stated the summons was addressed to 4124 West 18th Street, a tavern. A young woman behind the bar told him defendant was home sleeping. He knew where defendant lived and drove out there in the afternoon. He got him out of bed, and said, " 'Joe, this is an accident summons, are you insured?' He says, 'yes.' I said 'Give it to your insurance,' and then I left." He further testified that he had never seen the witness Swift before but was sure that "I am never mistaken on Joe Burris because I know him very well. I am not mistaken about where I left the summons. . . . [I am] positive." He also affirmed that he had served "some executions in this case" in addition to other "summonses before this."

Defendant's supporting affidavit states he had no knowledge of the judgment until he was served by the deputy bailiff on or about October 17, 1962. Other than denying personal service or service by mail, the affidavit makes no reference to receipt of any summons at any time. The supporting affidavit of his attorney states that the summons was delivered to him

203

by defendant in January, 1961, and we assume he meant January, 1962. The supporting affidavit of the insurance broker states the summons was delivered to him in January, 1961, and again, we assume he meant 1962. No statement is made in any of these affidavits that the summons was not delivered personally to defendant, nor is any reason given for defendant's failure to promptly complain about the manner in which the summons was served, nor is any statement made by either the insurance broker or the attorney as to why the suit was not promptly defended.

After reviewing this record, we have come to the conclusion that it displays a lack of candor by defendant with the trial court. Defendant's testimony that the porter delivered the summons to him must be compared with the three supporting affidavits and the opening statement by counsel that the "insurance carrier . . . neglected it." From this comparison, defendant's denial of personal service is entitled to little weight when offered to overcome a sheriff's return of personal service, and it is not convincing when considered with the positive statements of the deputy bailiff, who testified he had known defendant for about two years and identified him in open court.

We conclude that defendant did not meet the burden imposed upon him to impeach or set aside the bailiff's return or to show by clear and convincing evidence that the summons was not personally served on defendant. As has been said in this state, the stability of judicial proceedings requires that the return of an officer, made in the due course of his official duty and under the sanction of his official oath, should not be set aside or impeached except upon clear and satisfactory evidence. Pyle v. Groth, 15 Ill App2d 361, 366, 146 NE2d 219 (1957).

In the alternative, if we accept the theory that the summons was delivered to the porter and he, in turn,

delivered it to defendant in January, 1962, we think the record of the proceedings thereafter clearly shows that defendant failed to exercise due diligence in preventing the entry of the ex parte judgment, or a reasonable excuse for not having made his defense, if any, in due time. Colletti v. Schrieffer's Motor Service, Inc., 38 Ill App2d 128, 133, 186 NE2d 659 (1962).

Finally, defendant contends that the entry of the ex parte judgment is improper because the matter proceeded to trial without defendant being advised of the waiver of the jury by plaintiff. Defendant relies on Westmoreland v. West, 19 Ill App2d 161, 153 NE2d 275 (1958), where it was held that failure of defendants to appear at the trial "did not waive their right to a jury trial unless they had been advised of the waiver thereof as the statute requires." The Westmoreland case is not in point here, because the defendant in that case had filed an answer as well as an appearance. The court there distinguished the situation presented here on the ground that where no answer is filed, no issue of fact is presented for a jury.

We conclude that the trial court's order in vacating the judgment of February 9, 1962, was an abuse of discretion and, accordingly, the order is reversed.

Reversed.

BURMAN and KLUCZYNSKI, JJ., concur.