706

PUBLIC TAXI SERVICE, INC. *et al.*, Plaintiffs-Appellants, *v.* KAREN AYRTON, Defendant-Appellee.

(No. 56001;

First District (3rd Division)—November 1, 1973.

Sherman Dickholtz, of Chicago, for appellants.

Ernest K. Koehler, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

This litigation arose from a collision between two vehicles which were westbound on Diversey Avenue, Chicago, on January 17, 1965. The vehicles were a taxi cab, owned by Public Taxi Service and driven by James Taylor, and an automobile driven by Karen Ayrton. Exactly two

years after the accident Public Taxi and Taylor each sued Ayrton for $100 damages. Ayrton filed an answer, a jury demand and a counterclaim.

In late May 1970, Ayrton received notice that both Public Taxi and Taylor would move to raise their *ad damna*—Public Taxi to $300, Taylor to $4,700. R. S. Deutsch, the attorney representing Mrs. Ayrton, and Sherman Dickholz, the attorney for Public Taxi and Taylor, conferred in court on May 26, 1970, about the proposed increases. That same day the complaints were amended. Fifteen days later, default judgments were entered in favor of Public Taxi and Taylor in the amounts of $289.12 and $4,700 respectively, and against Ayrton on her counterclaim.

On September 25, 1970, garnishment summonses were issued on behalf of the plaintiffs against Ayrton's insurance carrier. On October 16, 1970, Ayrton filed a motion under section 72 of the Practice Act to vacate the judgments (Ill. Rev. Stat. 1969, ch. 110, par. 72) which was supported by the affidavit of her attorney. Deutsch swore that when he and Dickholtz conferred in court on May 26, 1970, an agreement was made that the motion to increase the *ad damna* would not be presented to the court that day and that a trial date would not be set until interrogatories had been answered. He stated that pursuant to this agreement he wrote to Dickholtz on June 25th and July 14th, 1970. He further stated that neither Ayrton nor he received notice of the defaults. The motion also averred that Ayrton had a meritorious defense in that the cab driven by Taylor made a sudden left-hand turn in front of her automobile.

Dickholtz did not answer the motion but, on October 26th, he filed a special and limited appearance supported by an affidavit. The latter stated that the court was without jurisdiction to hear the motion to vacate because Ayrton had not served notice of the motion on the judgment creditors as required by statute and rules. After a hearing in February 1971, at which testimony was heard and exhibits introduced, the court, based on its equitable powers, set aside the judgments and set the case for trial. Dickholtz, for Public Taxi and Taylor, elected to stand on the jurisdictional issue and perfected this appeal.

■■ A petition to set aside a default judgment under section 72 is to be considered in the light of equitable principles. (*Franklin v. Wellco Co.* (1972), 5 Ill.App.3d 731, 283 N.E.2d 913.) A court of review is not disposed to overturn a decision based upon equitable considerations unless it concludes that there was an abuse of discretion by the trial court.

■■ The facts of this case, insofar as they are known to us, cry out for equitable relief. We say insofar as they are known to us because Attorney Dickholtz did not answer the motion or present testimony at the hearing. Our knowledge of the facts comes from the motion, the affidavit

of Attorney Deutsch and the evidence and testimony adduced in Ayrton's behalf. The uncontradicted averments and the testimony show that Ayrton aggressively defended Taylor's and Public Taxi's suits. She filed an answer and a counterclaim and her attorney appeared in court whenever it was necessary. He came to court on May 26, 1970, in response to a notice from Dickholtz that Taylor would move to raise his *ad damnum* from $100 to $4,700 and Public Taxi would move to raise its *ad damnum* from $100 to $300. The motions were not presented because of an agreement made between the attorneys. The agreement was that the motions would be held in abeyance until all interrogatories were answered and that after this was done a date for trial would be agreed upon. Pursuant to this agreement, Ayrton's attorney left the courtroom and wrote Dickholtz on June 25th and July 14th. Dickholtz did not respond to either letter. Ayrton's attorney did not learn until late in September that the agreement had been violated; that after he left the courtroom on May 26th the *ad damna* had been raised; and that, without further notice, default judgments were entered on June 10th. No notice of the judgments was ever received by him or Ayrton and no execution was issued. They first learned of the judgments some time after September 29, 1970, when Ayrton's insurance company informed them of the garnishment proceedings. A motion was quickly prepared and filed to vacate the judgments. Since more than three months had elapsed between the date of the defaults and the date they learned of them, the motion was regarded as a petition filed under section 72 of the Practice Act. The petition alleged a meritorious defense and was diligently filed.

Notice of the motion was mailed to Dickholtz, Taylor's attorney, and to Public Taxi, Taylor's last known employer. Dickholtz, who knew Taylor's address, refused to reveal it and every effort was made to locate Taylor. A search was made of telephone books; the Driver's License Division of the Secretary of State's office was contacted as were the Auto License Division of the City Clerk of Chicago and the Cook County Credit Bureau. An investigator was hired. He visited Taylor's last known address and called upon his last known employer. He contacted cab companies and the license bureau of the livery service of the City of Chicago; he asked questions in Taylor's neighborhood and checked his insurance carrier, and he addressed inquiries to Taylor's attorney and the president of Public Taxi—all without success.

In addition to all these factors, it was disclosed to the court that Taylor, two or three months after the accident, had signed a general release of all claims against Ayrton.

The violation of the agreement, the increase in Taylor's *ad damnum* from $100 to $4,700, the default judgments entered a few days thereafter,

the $4,700 judgment in 1970 in favor of a party who had in 1965 renounced all claim for damages, the obvious attempt to conceal the judgments by not replying to letters concerning the case, the failure to take out execution within 30 days after the judgments, the more than three months delay in starting garnishment, and the attempt to frustrate the defendant's petition for redress by refusing to divulge Taylor's whereabouts, demonstrated the unfair conduct of the plaintiffs and their attorney and the unconscionable advantage taken of the defendant. Justice and fair play called for the exercise of the trial court's equitable powers.

■■■ A more difficult problem, however, is whether the trial court had jurisdiction to consider the motion. A section 72 petition, although filed in the same case under the same number and title, is regarded as an independent action (*In re Estate of Peterson* (1972), 3 Ill.App.3d 636, 279 N.E.2d 434) and the defendants named in the petition must be notified anew. The statute (Ill. Rev. Stat. 1969, ch. 110, par. 72(2)) states that all parties shall be notified as provided by rule. Rule 106 (ch. 110A, par. 106) provides that notice of the filing of a petition under section 72 shall be given by the same methods as provided for in Rule 105 (ch. 110A, par. 105). Subparagraph (b) of Rule 105 states that notice may be served in one of three ways: (1) by the method provided by law for service of summons, (2) by prepaid registered mail and (3) by publication. Notice is indispensible to due process and compliance with the rules is essential to jurisdiction. If the notice is invalid, jurisdiction is lacking and subsequent orders are likewise invalid. *Andonoplas v. Jaremko* (1972), 9 Ill.App.3d 298, 292 N.E.2d 225; *Acosta v. Burris* (1964), 47 Ill.App.2d 201, 197 N.E.2d 757.

■■ Because of the different facts applying to each, the cases of Public Taxi and Taylor must be distinguished. There is a dispute as to whether proper notice was served upon Public Taxi. Public Taxi's address was known; it could have been served personally or by registered mail. The defendant represented to the court that proper notice was served and called attention to a copy of the notice in the court file. Counsel for Public Taxi examined the notice, said it was deficient but stood upon his special appearance. No notice with proof of service can be found in the record and we are unable, therefore, to determine its legal adequacy. In its absence, we must abide the judgment of the trial court who saw the notice and set aside Public Taxi's judgment. We must conclude there was a sound basis for the court's decision. *Smith v. Smith* (1962), 36 Ill.App. 2d 55, 183 N.E.2d 559.

As far as Taylor is concerned, it is undisputed that the defendant did not use any of the methods of serving notice prescribed in Rule 105(b). Taylor's address was unknown to the defendant and in spite of all her

efforts could not be ascertained. Therefore, she could not serve him personally, and she could not serve him by prepaid registered mail and obtain a receipt evidencing such service as is required by Rule 105(b) (2). She could have notified him by publication (Rule 105(b) (3) ), but she did not.

What she did do was to send notice to Dickholtz, Taylor's attorney. Notice of a section 72 petition was also served upon an attorney in *Pease v. Herb Julian Cab Co.* (1972), 7 Ill.App.3d 179, 287 N.E.2d 200. A default judgment had been entered against the defendants. They filed a section 72 petition to vacate the judgment and served notice upon the plaintiff's attorney of record but not upon the plaintiff. The plaintiff filed a special appearance for the sole purpose of contesting the trial court's jurisdiction. The default was vacated and, on the plaintiff's appeal, the defendants urged that Rule 11 (Ill. Rev. Stat. 1969, ch. 110A, par. 11), which provides that if a party is represented by an attorney of record service shall be made upon the attorney, authorized the procedure they used. Although the reviewing court in the *Pease* case found that it did not have to decide the issue, the authors of the supplement to the Historical and Practice Notes of Smith-Hurd Annotated Statutes (ch. 110A, sec. 106, 1973-1974) seized upon the *Pease* case to caution against attempting, in serving notice of a section 72 petition, to substitute notice to an attorney in lieu of the methods prescribed in Rule 105(b):

> "The opinion in *Pease v. Herb Julian Cab Co.,* * * * refers to but does not dispose of the contention that service of a section 72 petition on opposing counsel in the proceeding leading to the judgment being attacked is proper by virtue of Supreme Court Rule 11, * * * In view of this rule's reference to the provisions of rule 105, and the fact that, while a section 72 petition does not require new process, it specifically requires service by the same method provided for the giving of notice of additional relief to parties in default, the language of rule 11 should not be construed to provide an alternative to the requirements of this rule and rule 105."

■■ We are in accord with this admonition. Rule 11, except as hereafter noted, has no application to the notice required for the filing of a petition under section 72. Rule 11 applies to the service of papers (other than process and complaint) on the parties to a case who are not in default. If a party has appeared and is not represented by counsel, service shall be made upon the party. If an attorney has appeared for him, service shall be made upon the attorney.

Rule 105, on the other hand, applies to parties who are in default— those who have not appeared either personally or by counsel. Ordinarily, a party who has not appeared need not be served with notices of motions.

if, however, relief is sought from him other than that requested in the complaint, he must be notified. A defendant, for example, might voluntarily default if the *ad damnum* was for a small amount but would appear and contest the complaint if the *ad damnum* were substantially increased. Rule 105 covers this situation; it provides that if new or additional relief is sought from a party in default he must be served with notice by one of the methods set out in the rule.

Rule 105 applies to the notice required for the filing of a section 72 petition, not because of the fundamental purpose of the rule, but because its provisions for notice have been incorporated into section 72. It is fitting that this be so as the litigation to which a section 72 petition relates has been terminated and the judgment to which it is directed has become final. The opposite party is no longer in court and, since a section 72 petition is a new proceeding which may be filed as late as two years after the judgment, it is appropriate that he be notified anew.

■■■ Notice to the opposite party is required rather than to his attorney in the original case because, after judgment, it cannot be assumed that the same attorney continues to represent him. But if the attorney's subsequent actions—such as attempting to obtain satisfaction of the judgment—indicate that he is still the party's attorney, then there is no logical reason why the party should not be notified through him. The object of process is to notify a party of pending litigation so as to secure his appearance. (*Lord v. Hubert* (1957), 12 Ill.2d 83, 145 N.E.2d 77.) Process is unnecessary if a party is already in court or if he appears in person or by an attorney. An attorney who has filed an appearance is chargeable with notice of all orders affecting pending causes; notices served upon him are notices served upon his client. Rule 105(b) does not demand personal service upon a party who is still in court. To give the rule a less flexible interpretation could effectively defeat equitable relief in a section 72 action.

■■ The circumstances of this case illustrate the need for an exception to the three methods of service prescribed in Rule 105(b) as it pertains to section 72 petitions. Service of notice upon an attorney, as provided in Rule 11, should be allowed for a section 72 petition when the original attorney is in court representing the opposite party in a matter ancillary to the original judgment. Serving notice upon Dickholtz constituted notice to Taylor and was sufficient notice to satisfy the purpose of Rule 105(b) and the requirements of due process. Substance is to be preferred over form and the rule should be liberally construed in order to promote justice. Its true purpose is to make certain that the party who has the judgment is informed that an effort is being made to take it away. Taylor did not suffer for lack of service despite Ayrton's

noncompliance with the literal provisions of Rule 105(b). Dickholtz was still his attorney and Dickholtz' representation did not end when the default judgment was entered. He was empowered to collect the judgment and he represented Taylor, the judgment creditor, in the garnishment proceedings. He was trying to enforce the judgment at the time he received the defendant's notice that she was going to court to have the judgment vacated.

If actual notice is the goal, and it is, notifying Taylor through his attorney was far better than resorting to publication—the only remaining method of notification available to Ayrton under the rule. Publication is an extraordinary means of serving notice—one unknown to the common law. (*Star Brewery of Chicago v. Otto* (1895), 63 Ill.App. 40.) It is a statutory device which allows litigation to proceed. It serves an important function in our judicial system; without it justice would be denied in many cases. But no one knowledgeable in the processes of the law would contend that it approaches perfection. From the viewpoint of the person to be notified, it is the least satisfactory method of receiving notice; often it is no notice at all. As contrasted with the remote possibility of his personally seeing a published notice, Taylor received actual notice from his own counsel. To insist that Ayrton should have gone through the motion of serving notice by publication would be paying obeisance to a ritualistic gesture rather than recognizing a factual accomplishment. It would be gratifying sharp legal practices rather than permitting the party overreached to have her day in court.

The equities of the case and the service of adequate notice sustain the trial court's decision. Its order will be affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.