2021 IL App (1st) 191669-U

Nos. 1-19-1669 & 1-19-2124 (cons.)

Order filed April 21, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for GSAAHET 2006-17, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| BEATA OSINSKI A/K/A BEATA G OSINSKI A/K/A BEATA GRETA OSINSKI; BV HOTELS, INC.; M.E.R.S. INC., AS NOMINEE FOR SUNTRUST MORTGAGE, INC.; KINGSPORT COURT HOMEOWNERS ASSOCIATION, INC.; UNKNOWN OWNERS and NON RECORD CLAIMANTS; and HOSPITALITY SPECIALTY SERVICES CORPORATION, | ) ) ) ) ) ) ) ) ) ) | No. 10 CH 25402 |
| Defendants, | ) ) | Honorable Gerald V. Clearly, |
| (BV Hotels, Inc., Defendant-Appellant). | ) | Judge presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

**ORDER**

Nos. 1-19-1669 & 1-19-2124 (cons.)

¶ 1  *Held*:  We reverse the circuit court's denial of defendant BV Hotels, Inc.'s motion to quash service by publication where plaintiff Deutsche Bank National Trust Company, as Trustee for GSAAHET 2006-17, failed to comply with the service by publication statute and circuit court local rule prior to serving BV Hotels by publication.

¶ 2  After plaintiff Deutsche Bank National Trust Company, as Trustee for GSAAHET 2006-17, served defendant BV Hotels, Inc., by publication and BV Hotels had an order of default entered against it, BV Hotels filed a motion to quash service by publication. The circuit court denied the motion. BV Hotels now appeals, contending that the court erred in denying its motion to quash where Deutsche Bank's special process server affidavits were stale by the time Deutsche Bank filed its affidavit for service by publication and where Deutsche Bank did not meet the statutory requirements for service by publication. For the reasons that follow, we reverse the circuit court's order denying BV Hotels' motion to quash service by publication.

¶ 3  I. BACKGROUND

¶ 4  A. Earlier Proceedings

¶ 5  In May 2006, Beata Osinski obtained a loan, which was secured by a mortgage on a property located on the 1400 block of Kingsport Court in Northbrook. In November 2009, Osinski conveyed the property to BV Hotels, a Wisconsin corporation, through a quit claim deed. In that same quit claim deed, Osinski also conveyed a property located on the 300 block of Vita Drive in Wheeling to BV Hotels. Five months later, BV Hotels conveyed half of its interest in the Kingsport Court property to Hospitality Specialty Services Corporation (Hospitality Corporation) through a quit claim deed. In June 2010, after Osinski defaulted on her loan, Deutsche Bank filed a foreclosure complaint against Osinski, BV Hotels, M.E.R.S. Inc., as Nominee for Suntrust Mortgage, Inc., Kingsport Court Homeowners Association, Inc., and any unknown owners and

- 2 -

non-record claimants. In conjunction with the foreclosure complaint, the circuit court appointed Firefly Legal, Inc., as special process server.

¶ 6     On July 30, 2010, John Valente of Firefly filed a special process server affidavit asserting that Firefly had served M.E.R.S. and Kingsport Court, but had not served Osinski or BV Hotels. A few days later, Valente submitted an affidavit of due diligence, wherein he detailed the efforts to locate BV Hotels including searching public databases and using various other resources, such as property tax rolls, UCC filings and deed transfers. From his search, Valente asserted that three addresses associated with BV Hotels were found: a commercial address at 643 Academy Drive in Northbrook, an apartment on the 9100 block of West Terrace Drive in Niles and another residential address on the 5300 block of West Van Buren Street in Chicago. However, Valente stated that various service attempts at these addresses were unsuccessful, as were laid out in additional affidavits submitted by the Firefly employees who made those attempts. As a result, Valente concluded that he was unable to locate BV Hotels.

¶ 7     In one affidavit, Peter Galba of Firefly asserted that he attempted to serve BV Hotels in the care of Gocha Gogoladze at the Academy Drive address on June 16, June 18, June 22, June 24, June 28 and July 4 of 2010, but he could not effectuate service. Galba made these attempts at various times in the day, as early as 11:52 a.m. and as late as 5:10 p.m. Galba stated that: "Attempts were made at this address; however no contact could be made with the defendant at this address. There is no evidence that the property is vacant. Office closed, spoke to different individuals and received different information. But still never in office and no way to contact. Server has left contact number, but never received return call from defendant." In a second affidavit from Galba, he asserted that he attempted to serve BV Hotels in the care of Gogoladze at the apartment in Niles on July 8, July 10 and July 13 of 2010, but he could not effectuate service. Galba made these

attempts at various times in the day, as early as 10:50 a.m. and as late as 2:24 p.m. Galba stated that: "The defendant's name is not listed on the doorbells or mailboxes. Attempts were made at this address; however no contact could be made with the defendant at this address. There is no evidence that the property is vacant. Knocked on door, no answer. Time on this file has expired." In a third affidavit from Gary McDaniels of Firefly, he asserted that he attempted to serve BV Hotels in the care of Gogoladze at the residence located in Chicago on July 8, 2010, but he could not effectuate service. McDaniels stated that: "The defendant could not be served at this address. Per current resident, the defendant is unknown at this address. Per Mr. Thomas the defendant does not live here."

¶ 8    On September 8, 2010, Deutsche Bank filed an affidavit for service by publication through its attorney, Jennifer Vander Wagen, asserting that, upon due inquiry, BV Hotels in the care of Gogoladze, Osinski and the "unknown owners and non record claimants" could not be found and thus, service could not be effectuated on them. Vander Wagen averred to the various steps taken to locate the parties, including ordering and reviewing a credit report, reviewing the "Deed to Defendants," making "12 attempts to serve Defendants" as well as other investigations as laid out in the affidavit of due diligence from Valente that was attached. Vander Wagen concluded her affidavit by stating that "Defendants last known address" was on the 1400 block of Kingsport Court in Northbrook. Later that month, Deutsche Bank filed a certificate of publication asserting that the Chicago Daily Law Bulletin published the notice of the lawsuit on September 10, 17 and 24, 2010. The foreclosure proceedings continued for the next year.

¶ 9    On August 3, 2011, Regina Patterson of Firefly submitted an affidavit of due and diligent search detailing her attempts to discover additional names and addresses of "BV Hotels, Inc. c/o Gocha Gogoladze." These included "searching public and non-public databases, as well as various

other data resources and records, including, but not limited to: Directory Assistance; professional licenses; real property tax rolls; and real property sales and transfer records." Patterson further stated that she inquired with the Illinois Secretary of State and determined that BV Hotels was in good standing. As well, she asserted that, based on a directory assistance search, there was no landline listing for "our subject in Cook County." Patterson listed the various attempts to serve BV Hotels from 2010 to 2011, as detailed in the special process server affidavits from Firefly's employees. The 2010 attempts were the ones detailed in McDaniels and Galba's affidavits. The 2011 attempts were laid out in additional affidavits submitted by Firefly from Hannah McKinney and Jeffrey Rosenbloom.

¶ 10    In McKinney's affidavit, she asserted that she had attempted to serve BV Hotels in the care of Gogoladze at an office suite located at 35 East Wacker Drive in Chicago on July 13, 2011, but she could not effectuate service. McKinney stated that: "The property at this address is vacant. Floor receptionist said that the firm that previously occupied this suite had moved a few months ago." In Rosenbloom's affidavit, he asserted that he attempted to serve BV Hotels in the care of Gogoladze at the Academy Drive address in Northbrook on July 5, 2011, but he could not effectuate service. Rosenbloom stated that: "The property at this address is vacant. This is a vacant commercial building that has a posted eviction notice from the Cook County Sheriffs office that was posted [January 27, 2011]. Also, there is another vacant property posting that has the name Berkson and Sons" with a phone number "and it says to call with questions."

¶ 11    Also on August 3, 2011, Deutsche Bank filed an affidavit for service by publication through its attorney, Shaun Callahan, asserting that upon due inquiry the "defendant(s)" BV Hotels and the "unknown owners and non record claimants" could not be found and thus service could

not be effectuated on them. Callahan averred that several actions had "been taken by the office of Plaintiff's counsel to ascertain the whereabouts of the above-named Defendant(s)." These were:

"a. Ordered and reviewed data report on Defendant(s) for possible address on or about April 26, 2010.

b. Reviewed mortgagee's foreclosure information package for possible addresses on or about April 30, 2010.

c. Reviewed Deed to Defendants for possible additional addresses on or about April 30, 2010.

d. Reviewed public records for a pending Probate case on or about June 3, 2010.

e. Ordered and reviewed property inspection report to determine occupants of the subject property on or about June 14, 2010."

Additionally, Callahan stated that "[o]ther investigations [were] completed" and directed the circuit court to the affidavits of Patterson, McKinney, Rosenbloom, McDaniels and Galba from Firefly. Lastly, Callahan asserted that special process servers had made several attempts to serve "defendants" and that BV Hotels' last known place of residence was the Academy Drive address in Northbrook. Callahan also stated the last known place of residence for the "unknown owners and non record claimants" was the Kingsport Court address in Northbrook.

¶ 12    A week later, the clerk of the circuit court of Cook County submitted a filing certifying that, on August 9, 2011, she sent a notice of service by publication to BV Hotels in the care of Gogoladze to the Academy Drive address. Later that month, Deutsche Bank filed a certificate of publication stating indicating that BV Hotels had been served by publication in the Chicago Daily Law Bulletin on August 8, 15 and 22, 2011.

¶ 13 The foreclosure proceedings continued, and in January 2014, Deutsche Bank filed an amended foreclosure complaint, in which it added Hospitality Corporation as a defendant. Seven months later, Deutsche Bank filed a motion for an order of default against multiple defendants, including BV Hotels, for its failure to have filed an answer or other responsive pleading to its amended foreclosure complaint. Deutsche Bank included a certificate with its motion from its attorney, who certified that BV Hotels was served by publication in August 2011. In August 2015, the circuit court entered an order of default against BV Hotels and in favor of Deutsche Bank, and the foreclosure proceedings continued.

¶ 14                    B. Motion to Quash Service by Publication

¶ 15 In February 2019, an attorney entered an appearance on behalf of BV Hotels. That attorney also represented Hospitality Corporation and Osinski in the foreclosure proceedings. The following month, BV Hotels filed a motion to quash service by publication, first arguing that Deutsche Bank failed to file a Cook County circuit court Rule 7.3 affidavit (Cook Co. Cir. Ct. R. 7.3 (eff. Oct. 1, 1996)) that identified what efforts Deutsche Bank made to locate it. Additionally, BV Hotels argued that Deutsche Bank never exercised due diligence to identify its location and noted that it could have been found at the Academy Drive address in August and September 2010 or by serving its registered agent in Wisconsin at any time from 2010 onward. Furthermore, BV Hotels asserted that Deutsche Bank could have served its "agent" at an address located on the 300 block of Vita Drive in Wheeling. Given these failures, BV Hotels contended that Deutsche Bank failed to strictly comply with the service by publication statute, which resulted in it never being properly served with process and the circuit court never acquiring personal jurisdiction over it.

¶ 16 BV Hotels attached to its motion three exhibits. One exhibit was a printout from the Wisconsin Department of Financial Institutions' website, which showed that BV Hotels was an

active Wisconsin corporation that had been registered since 2004. The printout showed that BV Hotels had a registered agent, Joseph Varan, located in Madison, Wisconsin. The second exhibit was a printout from the Illinois Secretary of State's website, which showed that BV Hotels had registered as a foreign corporation in February 2010. The printout showed that BV Hotels was a Wisconsin corporation, but that its "status" was "withdrawn" as of 2019 when BV Hotels filed its motion to quash. The printout did not show a registered agent's name, but rather stated "agent vacated" and noted the agent change date was in August 2015.

¶ 17    The final exhibit was an affidavit from Joseph Varan, BV Hotels' president, who had been involved with the corporation since 2009. Varan averred that BV Hotels could have been served at any one of three addresses: the Academy Drive address in Northbrook, the Vita Drive address in Wheeling and its address registered with the Wisconsin Department of Financial Institutions. Concerning the Academy Drive address, Varan averred that BV Hotels was doing business from that address in 2010, and it had a "representative," Robert Slomczewski, working there on a "daily basis," who could have been served. Concerning the Vita Drive address, Varan asserted that Deutsche Bank could have found this address by reviewing the quit claim deed that conveyed the Kingsport property from Osinski to BV Hotels because that same quit claim deed also conveyed the Vita Drive property from Osinski to BV Hotels. Varan further averred that a "representative" of BV Hotels, Nino Giogorbiani, was living at the Vita Drive address in 2010, and he could have been served. Lastly, Varan posited that Deutsche Bank could have found BV Hotels at its address registered with the Wisconsin Department of Financial Institutions.

¶ 18    In response to BV Hotels' motion, Deutsche Bank detailed its unsuccessful efforts to locate and serve BV Hotels and asserted that it filed the requisite Cook County circuit court Rule 7.3 affidavit (Cook Co. Cir. Ct. R. 7.3 (eff. Oct. 1, 1996)). Deutsche Bank highlighted the affidavit for

service by publication it filed through its attorney, Shaun Callahan, that included its affidavit of due and diligent search from Patterson as well its special process server affidavits pertaining to its service attempts on BV Hotels at various addresses. Deutsche Bank argued that, taken together, these affidavits complied with Rule 7.3. Furthermore, Deutsche Bank responded to the various arguments made by BV Hotels about how it should have been able to find BV Hotels at the three addresses. Deutsche Bank highlighted the Business Corporation Act of 1983 (805 ILCS 5/1.01 *et seq.* (West 2010)), which specified that foreign corporations, such as BV Hotels, must file an application for authority to transact business in Illinois. Deutsche Bank stated the law mandated that, in the application, a foreign corporation include the name and address of its proposed registered agent in Illinois. According to the application BV Hotels filed with the Illinois Secretary of State in February 2010, which Deutsche Bank attached to its response, BV Hotels was a "real estate" and "hospitality management" business, and it listed Gogoladze and the Academy Drive address in Northbrook as its registered agent and registered office in Illinois. Deutsche Bank asserted that, on multiple occasions, it attempted to serve the very person BV Hotels listed as its Illinois registered agent to no avail.

¶ 19    Although in Varan's affidavit, he asserted that Deutsche Bank could have served Slomczewski at the Academy Drive address, Deutsche Bank claimed that either Varan was lying or Slomczewski was evading service. Deutsche Bank argued that, if Slomczewski was working there on a daily basis, he would have been present for one of the six service attempts by Galba of Firefly at that address. Additionally, Deutsche Bank posited that it had no reason to attempt service on the Vita Drive address and provide process to Giogorbiani because the only officer or director listed in BV Hotels' application for authority to transact business in Illinois was Gogoladze. Lastly, Deutsche Bank asserted that it did not need to attempt service on BV Hotels at its address registered

with the Wisconsin Department of Financial Institutions because it made several service attempts to BV Hotels' registered agent and office in Illinois. Deutsche Bank concluded that its attempts to locate and serve BV Hotels were sufficiently diligent to permit its service by publication.

¶ 20    In its reply, BV Hotels highlighted that Deutsche Bank never filed a counteraffidavit to its affidavit from Varan and therefore argued that all of Varan's averments must be accepted as true. BV Hotels further reiterated that Deutsche Bank never made any service attempts at the address in Wheeling or at its registered agent's address in Wisconsin. And BV Hotels maintained that Deutsche Bank's service attempts at the Academy Drive address in Northbrook were insufficient.

¶ 21    On May 23, 2019, following a hearing, the circuit court entered a written order denying BV Hotels' motion to quash service by publication without explanation.

¶ 22                        C. Remaining Proceedings

¶ 23    Ultimately, in March 2019, on Deutsche Bank's motion, the circuit court entered a judgment of foreclosure and for the sale of the property. Following a July 1, 2019, auction at which it was the highest bidder, Deutsche Bank filed a motion for an order to approve the report of sale and distribution, to confirm the judicial sale and for possession of the property. On July 18, 2019, the court granted Deutsche Bank's motion and approved the sale.

¶ 24    Thereafter, BV Hotels timely appealed the circuit court's denial of its motion to quash service by publication as well as the court's order granting Deutsche Bank's motion for an order to approve the report of sale and distribution, to confirm the judicial sale and for possession of the property. In the same notice of appeal, Osinski appealed the court's order granting Deutsche Bank's motion for an order to approve the report of sale and distribution, to confirm the judicial sale and for possession of the property as well as other orders of the court. Their appeal was docketed as Case No. 1-19-1669. Later, Hospitality Corporation separately appealed the court's

order granting Deutsche Bank's motion for an order to approve the report of sale and distribution, to confirm the judicial sale and for possession of the property as well as other orders of the court. That appeal was docketed as Case No. 1-19-2124.

¶ 25    On Deutsche Bank's motion, we consolidated both appeals. However, during the pendency of the consolidated appeal, we dismissed Osinski and Hospitality Corporation as appellants on Deutsche Bank's motions to dismiss on various grounds. As a result of the dismissal orders, only BV Hotels remains as an appellant.

¶ 26                                    II. ANALYSIS

¶ 27    BV Hotels contends that the circuit court erred when it denied its motion to quash service by publication where Deutsche Bank's special process server affidavits were stale by the time Deutsche Bank filed its affidavit for service by publication and where it could have been found at the Wheeling address and its Wisconsin address with due and diligent inquiry. BV Hotels accordingly argues that Deutsche Bank failed to comply with the service by publication statute.

¶ 28                          A. Service of Process Principles

¶ 29    In order to enter a valid judgment, the circuit court must have personal jurisdiction and subject-matter jurisdiction over the parties. *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 17. "Personal jurisdiction may be established either by service of process in accordance with statutory requirements or by a party's voluntary submission to the court's jurisdiction." *Id.* ¶ 18. Service of process protects the defendant's right to due process by providing the party proper notice of a lawsuit and an opportunity to be heard. *Bank of New York Mellon v. Karbowski*, 2014 IL App (1st) 130112, ¶ 12. "Failure to effect service as required by law deprives a court of jurisdiction over the person and any default judgment based on defective service is void." *Id.*

¶ 30    The Code of Civil Procedure (Code) states that a private corporation may be served by (1) leaving a copy of the process with its registered agent or any officer or agent of the corporation located in Illinois or (2) "in any other manner now or hereafter permitted by law," including by publication. 735 ILCS 5/2-204 (West 2010). A foreign corporation may be served in the same manner as a domestic corporation. *Slates v. International House of Pancakes, Inc.*, 90 Ill. App. 3d 716, 723 (1980). As the Code states, service on a private corporation can be done in any other matter permitted by law (735 ILCS 5/2-204 (West 2010)), which brings us to the Business Corporation Act of 1983 (Act). 805 ILCS 5/1.01 *et seq.* (West 2010). The Act specifically provides that a foreign corporation having the authority to transact business in Illinois may be served either upon its registered agent or the Illinois Secretary of State, the latter as provided by the statute. 805 ILCS 5/5.25(a) (West 2010).

¶ 31    When service on a private corporation cannot be accomplished by the traditional means, as provided by law, the Code allows a plaintiff to obtain service of process over a corporate defendant in an action affecting property by publication. 735 ILCS 5/2-206(a) (West 2010). The service by publication statute states that:

> "[P]laintiff or his or her attorney shall file, at the office of the clerk of the court in
>
> which the action is pending, an affidavit showing that the defendant resides or has
>
> gone out of this State, or on due inquiry cannot be found, or is concealed within
>
> this State, so that process cannot be served upon him or her, and stating the place
>
> of residence of the defendant, if known, or that upon diligent inquiry his or her
>
> place of residence cannot be ascertained, the clerk shall cause publication to be
>
> made in some newspaper published in the county in which the action is pending."
>
> *Id.*

However, service by publication is "an extraordinary means of serving notice—one unknown at the common law" and is the "least satisfactory method" of giving notice. *Public Taxi Service Inc. v. Ayrton*, 15 Ill. App. 3d 706, 713 (1973). It is often akin to giving "no notice at all." *Id.* To provide service by publication, the plaintiff must show "strict compliance with every requirement of the statute, including due diligence and due inquiry." *TCF National Bank v. Richards*, 2016 IL App (1st) 152083, ¶ 30. The "statutory prerequisites are not intended as *pro forma* or useless phrases requiring mere perfunctory performance but, on the contrary, require an honest and well-directed effort to ascertain the whereabouts of a defendant by inquiry as full as circumstances permit." *Bank of New York v. Unknown Heirs & Legatees*, 369 Ill. App. 3d 472, 476 (2006).

¶ 32    In addition to the service by publication statute, the circuit court of Cook County has adopted a local rule that adds to the affidavit requirement in mortgage foreclosure actions:

> "Pursuant to 735 ILCS 5/2-206(a), due inquiry shall be made to find the defendant(s) prior to service of summons by publication. In mortgage foreclosure cases, all affidavits for service of summons by publication must be accompanied by a sworn affidavit by the individual(s) making such 'due inquiry' setting forth with particularity the action taken to demonstrate an honest and well directed effort to ascertain the whereabouts of the defendant(s) by inquiry as full as circumstances permit prior to placing any service of summons by publication." Cook County Cir. Ct. R. 7.3 (Oct. 1, 1996).

¶ 33    Given the service by publication statute and the Cook County circuit court local rule, before a plaintiff can file an affidavit for service by publication, it must perform a " 'diligent inquiry' " in locating the defendant's residence and perform a " 'due inquiry' " in locating the defendant's whereabouts. *Citimortgage, Inc. v. Cotton*, 2012 IL App (1st) 102438, ¶ 18 (quoting *Bell Federal*

*Savings & Loan Ass'n v. Horton*, 59 Ill. App. 3d 923, 927-28 (1978)). In other words, there are two different aspects of a plaintiff's search that must occur. First, the plaintiff must work diligently in inquiring about the various possible locations of the defendant through, for example, searches of public records and databases. See *id.* ¶ 20. Second, the plaintiff must diligently perform service attempts based upon those searches and results. See *id.* And these efforts must be reflected in the plaintiff's affidavit for service by publication. See 735 ILCS 5/2-206(a) (West 2010); Cook County Cir. Ct. R. 7.3 (Oct. 1, 1996). The defendant can challenge the plaintiff's affidavit with its own affidavit demonstrating that, upon due inquiry, it could have been found. *Deephaven Mortgage LLC v. Jones*, 2020 IL App (1st) 191468, ¶ 38. The plaintiff, in turn, may respond to that affidavit "either by successfully questioning the conclusory nature of the defendant's challenge or by producing evidence demonstrating in fact that the plaintiff made due inquiry to locate the defendant so that process could be served upon him." *Id.*

¶ 34    Although the circuit court held a hearing on BV Hotels' motion to quash service by publication and it is the appellant in this appeal, BV Hotels did not include in the record on appeal a transcript of the hearing on its motion to quash service, a bystander's report or agreed statement of facts, as required by Illinois Supreme Court Rule 323 (eff. July 1, 2017). Instead, the record on appeal contains only the one-page written order from the circuit court denying BV Hotels' motion to quash service without explanation. Often, the failure to include such records is fatal to a party's claim of error. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156-57 (2005). However, when the circuit court denies a motion to quash service based solely upon documentary evidence, we review the court's denial *de novo*. *Jones*, 2020 IL App (1st) 191468, ¶ 32. Although we do not have the record of that hearing, both BV Hotels and Deutsche Bank agree that the court decided BV Hotels' motion to quash service solely based upon the documentary evidence. Consequently,

our review is *de novo*, and BV Hotels' failure to include a transcript of the hearing on its motion to quash service, a bystander's report or agreed statement of facts in the record on appeal is not fatal to its claim of error.

¶ 35                                B. The Instant Case

¶ 36     At the outset, we note that, on appeal, BV Hotels challenges the affidavit of due diligence submitted by Valente of Firefly, which was filed in August 2010, and Deutsche Bank's affidavit for service by publication filed through its attorney Vander Wagen, which was filed in September 2010. These affidavits, in addition to the special process server affidavits, led to service by publication in the Chicago Daily Law Bulletin in September 2010. The record is unclear exactly why Deutsche Bank served BV Hotels (in addition to Osinski and the "unknown owners and non record claimants") by publication in 2010 before repeating the process all over again in August 2011 to serve BV Hotels by publication. However, in moving for an order of default against BV Hotels in September 2014, Deutsche Bank utilized its service by publication on BV Hotels from August 2011, not the earlier date of September 2010. And in Deutsche Bank's affidavit for service by publication from August 2011, it did not rely on either Vander Wagen or Valente's affidavits. Only the incorporated supporting affidavits filed in conjunction with an affidavit for service by publication may be considered when determining whether a plaintiff properly served a defendant by publication. See 735 ILCS 5/2-206(a) (West 2010); Cook County Cir. Ct. R. 7.3 (Oct. 1, 1996); see also *Richards*, 2016 IL App (1st) 152083, ¶¶ 4, 33 (considering only the affidavit for service by publication filed through the plaintiff's attorney and the incorporated special process server affidavits when determining whether the plaintiff properly served the defendant by publication). We accordingly have not relied on either Vander Wagen or Valente's affidavits in determining whether Deutsche Bank properly served BV Hotels by publication. Therefore, BV Hotels

- 15 -

challenges to Valente's affidavit of due diligence and Deutsche Bank's affidavit for service by publication filed through Vander Wagen are irrelevant to this appeal.

¶ 37    We now turn to the affidavits that Deutsche Bank used to support its service on BV Hotels by publication. Deutsche Bank's affidavit for service by publication was filed by its attorney Shaun Callahan, and his affidavit referenced and included the affidavit of due and diligent search of Patterson as well as the special process server affidavits filed by various Firefly employees. Callahan's affidavit for service by publication has noticeable issues. In that affidavit, he averred that, upon due inquiry, "Defendant(s)," which for purposes of this affidavit included not only BV Hotels but also the unknown owners and non-record claimants, could not be found. Callahan then listed five actions taken by "the office of Plaintiff's counsel" to determine the location of BV Hotels. From this statement, it is entirely unclear *who* actually performed the five actions. While those actions may have been performed by Callahan himself, they could have been performed by other people from "the office of Plaintiff's counsel." Callahan's lack of particularity about *who* performed the five listed actions demonstrates his affidavit's failure to comply with Rule 7.3. See *Deutsche Bank National Trust Co. v. Brewer*, 2012 IL App (1st) 111213, ¶ 23 (observing that Rule 7.3 "requires sworn affidavits from the individuals who searched the databases" and finding noncompliance with the rule where an affidavit in support of service by publication "[f]ail[ed] to identify the persons who actually performed the searches" of various databases). This lack of specificity also violates the service by publication statute. Although the statute does not mandate what must be included in an affidavit to sufficiently show that the defendant cannot be found upon due inquiry (see 735 ILCS 5/2-206(a) (West 2010)), "an affidavit must show that the affiant bases his assertions on personal knowledge, and the affiant could competently testify to the facts asserted." *Brewer*, 2012 IL App (1st) 111213, ¶ 24. Here, again, absent an indication that Callahan

was the very individual who performed the various actions, his affidavit did not sufficiently show he based his assertions on personal knowledge.

¶ 38    Additionally, the actions taken by "the office of Plaintiff's counsel" lacked sufficient details. For example, one such action was: "Ordered and reviewed data report on Defendant(s) for possible address on or about April 26, 2010." This assertion demands further details and prompts various questions, such as where did that data report come from and what kind of data report was it? Similarly, another action was: "Reviewed public records for a pending Probate case." This assertion also demands further details and prompts various questions, such as was this probate case related to Gogoladze, and if not, who? The fact that questions have to be asked in response to Callahan's averments demonstrates the problems with his affidavit and why his vague assertions regarding the actions taken by the office of Deutsche Bank's counsel did not meet the particularity requirement set forth by Rule 7.3. It is true that, in determining whether service by publication was warranted, we consider not only the actual affidavit for service by publication from Callahan, but also the incorporated affidavit of due and diligent search of Patterson as well as the special process server affidavits. See *Richards*, 2016 IL App (1st) 152083, ¶¶ 4, 33. But where the critical affidavit for service by publication was so defective on its face, it does not matter how compliant the rest of the affidavits filed in support of service by publication were, and we need not review the additional affidavits any further. Because Callahan's affidavit for service by publication did not comply with the service by publication statute and Rule 7.3, the circuit court's order denying BV Hotels' motion to quash must be reversed.

¶ 39    While not necessary to our disposition given the deficiencies of Callahan's affidavit for service by publication, we will comment on a few additional facts of this case. It is true that Deutsch Bank attempted service several times at multiple different addresses, but there was no

evidence that BV Hotels or Gogoladze were ever at these addresses when Deutsch Bank attempted service. In none of the process server affidavits did they assert that there was a mailbox, a sign, a statement from anyone at any of the addresses indicating that BV Hotels or Gogoladze was located there. That is to say, Deutsch Bank's multiple service attempts at these addresses did not, in and of themselves, show due diligence. Moreover, neither Callahan in his affidavit nor Patterson in her affidavit of due and diligent search indicated that any attempt was made to find a telephone number associated with BV Hotels in Wisconsin. Patterson did aver to utilizing directory assistance to find a number associated with "our subject," whether that was BV Hotels or Gogoladze is unclear, in Cook County. But because BV Hotels was a Wisconsin-based corporation, it would seem that due inquiry would demand at least an attempt to find a telephone number associated with it in Wisconsin. See *id.* ¶ 33 (finding a plaintiff complied with the service by publication statute and Rule 7.3 where, in part, a special process server called the defendant "using three different phone numbers, but was unable to contact" her).

¶ 40    Furthermore, it is clear why Firefly attempted to serve BV Hotels at the Academy Drive address in Northbrook, as that was the registered office of BV Hotels in Illinois, but nowhere in Callahan nor Patterson's affidavits did they disclose how the apartment in Niles, the residence in Chicago or the office suite in Chicago were discovered. Better practice in preparing documentation to serve a party by publication should involve including such explanations in affidavits. Additionally, in Rosenbloom's affidavit, he asserted that he attempted to serve BV Hotels in the care of Gogoladze at the Academy Drive address in July of 2011 only to find the property vacant with an eviction notice posted. Rosenbloom further noted that another vacant property had "the name Berkson and Sons *** and it says to call with questions." Due inquiry would likely demand a call to Berkson and Sons, especially if Rosenbloom thought it was important enough to include

in his special process server affidavit. See *Bank of New York*, 369 Ill. App. 3d at 476 (the service by publication statute requires "an honest and well-directed effort to ascertain the whereabouts of a defendant by inquiry as full as circumstances permit").

¶ 41 We also briefly address one of the chief arguments raised by BV Hotels on appeal that the special process server affidavits were stale by the time Callahan filed the affidavit for service by publication. Callahan filed his affidavit on August 3, 2011, yet the majority of the service attempts on BV Hotels in the care of Gogoladze occurred in the summer of 2010. In fact, only 2 of the 12 service attempts occurred within 30 days of Callahan filing his affidavit. The other 10 service attempts occurred more than a year before Callahan filed his affidavit.

¶ 42 In *Karbowski*, 2014 IL App (1st) 130112, this court addressed a timeliness issue concerning an affidavit for service by publication, though not the exact one we have just highlighted. In the case, a bank initiated foreclosure proceedings and unsuccessfully attempted to serve the defendant various times at various different properties, as established by special process server affidavits. *Id.* ¶ 3. Eventually, on November 3, 2009, the bank filed an affidavit for service by publication that had been notarized on September 14, 2009, but detailed efforts to locate the defendant on September 23 and October 28, 2009. *Id.* ¶ 4. The defendant moved to quash the service by publication, which the circuit court denied. *Id.* ¶ 8.

¶ 43 On appeal, this court observed the very few cases discussing timeliness issues concerning affidavits for service by publication, but did highlight one—*Campbell v. McCahan*, 41 Ill. 45 (1866)—where there was a 20-day delay between the notarization of an affidavit in support of a motion for service by publication and the filing of the motion. *Karbowski*, 2014 IL App (1st) 130112, ¶¶ 19-20. Under the logic of *Campbell*, especially when judged by today's "age of instant information," the court in *Karbowski* concluded that the 50-day delay between the notarization of

the affidavit for service by publication and the filing of the affidavit displayed a lack of due diligence necessary to justify service by publication. *Id.* ¶ 21. The court in *Karbowski* also observed that the service by publication statute did "not prescribe any time limits for determining whether a plaintiff's efforts to locate a defendant are sufficient to warrant service by publication" but noted that "[c]ommon sense *** dictate[d] that an affidavit that recites efforts to locate a party occurring a substantial period of time prior to the filing of the motion to serve by publication may not be sufficient to establish the due diligence required." *Id.* ¶ 18. But because Callahan's affidavit for service by publication was defective on its face and violated the service by publication statute and Rule 7.3, we need not decide whether the special process server affidavits were stale by the time Callahan filed the affidavit for service by publication. We also note that Callahan filed his affidavit for service by publication the very same day his affidavit was notarized.

¶ 44    Lastly, although Deutsche Bank utilized service by publication against BV Hotels, it had another option. As previously discussed, in addition to what the Code provides for service on corporations (see 735 ILCS 5/2-204 (West 2010)), the Act provides that a foreign corporation having the authority to transact business in Illinois, such as BV Hotels, may be served either upon its registered agent or the Illinois Secretary of State, the latter under specifically enumerated circumstances. 805 ILCS 5/5.25(a) (West 2010). One such circumstance is if "the corporation's registered agent cannot with reasonable diligence be found at the registered office in this State." 805 ILCS 5/5.25(b)(2) (West 2010). Utilizing this method of service would have been far less burdensome and technical than what Deutsche Bank ultimately did by serving BV Hotels by publication. Notably, serving the Illinois Secretary of State would not have required an affidavit in compliance with Rule 7.3, which was fatal to Deutsche Bank in this case. Additionally, the reasonable diligence standard in section 5.25(b)(2) of the Act (805 ILCS 5/5.25(b)(2) (West 2010))

requires only service attempts on the registered agent at the registered office and does not "require attempted service on a corporate officer or other agent." *Dutch Farm Meats, Inc. v. Horizon Foods, Inc.*, 275 Ill. App. 3d 322, 326 (1995). Additionally, the plaintiff is not required "to seek out the new location of the registered agent once the agent abandons or moves from the registered office and fails to notify the Secretary of State of the new address." *Id.*

¶ 45    In the affidavit of Joseph Varan, BV Hotels' president, that was attached to BV Hotels' motion to quash service by publication, he asserted that BV Hotels could have been found at the Academy Drive address in Northbrook, where Deutsche Bank could have served Robert Slomczewski who allegedly was working there on a daily basis. Varan also averred that Deutsche Bank could have found and served BV Hotels at the Vita Drive address in Wheeling, where BV Hotels had a representative. And finally, Varan stated that Deutsche Bank could have found BV Hotels at its registered office in Wisconsin. In light of Callahan's deficient affidavit for service by publication, we did not need to discuss Varan's affidavit and determine whether Deutsche Bank could have found and served BV Hotels at these three locations. See *Jones*, 2020 IL App (1st) 191468, ¶ 38 (in moving to quash service by publication, the defendant can challenge the plaintiff's affidavit for service by publication with its own affidavit demonstrating that, upon due inquiry, it could have been found, which the plaintiff can then counter). But had Deutsche Bank utilized service on the Illinois Secretary of State, it would not have needed to attempt to serve Slomczewski at the Academy Drive address, BV Hotels' representative at the Vita Drive address or BV Hotels' registered office in Wisconsin. See 805 ILCS 5/5.25(b)(2) (West 2010); *Dutch Farm*, 275 Ill. App. 3d at 326. Rather, it would only have needed to use reasonable diligence in attempting to serve one person, Gogoladze, at one specific location, the Academy Drive address (see *id.*), which undoubtedly would have been less burdensome. However, Deutsche Bank attempted to use service

by publication, which demanded more stringent requirements (see 735 ILCS 5/2-206(a) (West 2010); Cook County Cir. Ct. R. 7.3 (Oct. 1, 1996)) and strict compliance (*Richards*, 2016 IL App (1st) 152083, ¶ 30), and it failed to comply.

¶ 46                                                    C. Remedy

¶ 47    As we have found that Deutsche Bank failed to comply with the service by publication statute and Rule 7.3, we must determine the remedy. "Failure to effect service as required by law deprives a court of jurisdiction over the person and any default judgment based on defective service is void." *Karbowski*, 2014 IL App (1st) 130112, ¶ 12. More specifically, a judgment of foreclosure entered without service of process is void. *Id.* Because Deutsche Bank did not properly serve BV Hotels by publication, BV Hotels was never properly served and the circuit court never obtained personal jurisdiction over it. This, in turn, results in all subsequent orders based upon the service by publication being void. See *id.* ¶ 26.

¶ 48    Deutsche Bank, however, argues that, if we find the circuit court erred in denying BV Hotels' motion to quash service, any challenge by BV Hotels to the court's order approving the report of sale is forfeited because BV Hotels did not respond to Deutsche Bank's motion to approve the report of sale. This failure cannot override the fact that the circuit court never acquired personal jurisdiction over BV Hotels in the first place. Consequently, we must reverse the circuit court's order denying BV Hotels' motion to quash service by publication, vacate the court's order of default in favor of Deutsche Bank and against BV Hotels, vacate the judgment of foreclosure and order confirming the sale, and remand this case to the circuit court for further proceedings consistent with herein. See *id.*

¶ 49                                                III. CONCLUSION

Nos. 1-19-1669 & 1-19-2124 (cons.)

¶ 50    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand for further proceedings.

¶ 51    Reverse and remanded.